IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF OHIO
DAYTON COURT

ELIJAH WHALEY
6957 Springfarm Court
Dayton, OH 45459;

        Plaintiff,

vs.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
an Ohio Corporation.
c/o Office of General Counsel 475
Anton Boulevard Costa Mesa,
California 92626;

        Defendants.

: Case No.: **3:22-cv-00356-MJN-CHG**

: **PLAINTIFF'S MEMORANDUM IN
SUPPORT OF OPPOSITION**

:

: **Honorable Judge, Michael J. Newman**

: **Honorable Magistrate Judge Caroline H.
Gentry**

:

:

:

:

:

:

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF OPPOSITION

Plaintiff, Elijah Whaley, proceeding Pro Se, respectfully submits this Memorandum in Opposition to

Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Dismiss Plaintiff's Verified

Complaint with Prejudice. As a Pro Se litigant, Plaintiff acknowledges the leniency afforded in procedural

matters and the requirement for Courts to construe Pro Se pleadings liberally. Likewise, Plaintiff

acknowledges the importance of adhering to the Federal Rules of Civil Procedure and has made a

conscientious effort to comply with these rules in the present case. Despite this, Plaintiff contends that the

Verified Complaint, which alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S. Code §

1681 et seq., is not a "shotgun pleading" as Experian claims, but rather a detailed, comprehensive, and

substantiated statement of the claims against Experian that build atop one another further substantiating

Experian's violations of the FCRA. Accordingly, Plaintiff respectfully requests that this Honorable Court deny Experian's Motion to Dismiss with Prejudice, and if any deficiencies are found within Plaintiff's complaint respectfully award the opportunity to amend.

In accordance with the Federal Rules of Civil Procedure, particularly Rule 8(a)(2), the Verified Complaint presents a clear statement of the claims, establishing that the Plaintiff is justifiably entitled to legal relief. This rule requires a "short and plain statement of the claim showing that the pleader is entitled to relief," See Verified Complaint (Doc. # 1, ¶¶ 3, 6, 7, 8). Furthermore, the Verified Complaint is structured in a chronological manner, ensuring each piece of evidence is presented in a coherent and organized fashion effectively demonstrating Experian's persistent negligence and blatant noncompliance for the regulations and requirements set forth by the FCRA. Contrary to Experian's contention that the Verified Complaint does not afford adequate notice of the Plaintiff's claims and their factual underpinnings or that it merely mirrors other complaints filed by the Plaintiff, the Verified Complaint distinctly outlines the facts and circumstances surrounding Experian's alleged violations of the FCRA.

Addressing Rules 10(b) and 12(b)(6) specifically, the Plaintiff submits that the Verified Complaint sets forth sufficient facts and plausible claims to satisfy the pleading requirements. Rule 10(b) requires separate statements for each claim founded upon a separate transaction or occurrence, and the Verified Complaint does precisely that, clearly outlining the alleged FCRA violations and the harm suffered by the Plaintiff as a result. Rule 12(b)(6) concerns dismissal for failure to state a claim upon which relief can be granted. See Id., (Doc. #1, ¶¶ 36-43, 45, 46, 52, 61-63, 66, 67, 80-82, 88, 91-94, 110, 119, 121-125, 280, 319). The Verified Complaint sets forth well-pleaded allegations, detailing the inadequacy of Experian's reinvestigation procedures, the presence of inaccuracies on the Plaintiff's credit report, subsequent harm suffered by the Plaintiff, including financial and emotional distress, and prayer for relief.

In conclusion, the Plaintiff submits that the Verified Complaint meets the procedural requirements of Rules 10(b) and 12(b)(6) of the Federal Rules of Civil Procedure and provides sufficient facts and plausible claims to warrant a denial of the Defendant's Motion to Dismiss. The Plaintiff respectfully requests that this Honorable Court allow this case to proceed on its merits and deny the Defendant's

Motion to Dismiss with prejudice in its entirety, and if any deficiencies are found within Plaintiff's complaint respectfully award the opportunity to amend.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... 1

I.  INTRODUCTION ............................................................................................................. 1

II.  SUMMARY .................................................................................................................... 2

III.  STATEMENT OF RELEVANT FACTS ......................................................................... 3

    A.  The Importance of Plaintiff's Disputes and Complaints in an FCRA Claim. ................. 3

IV.  LEGAL STANDARD ...................................................................................................... 10

V.  ARGUMENT .................................................................................................................. 13

    A.  Defendant's Allegation of a Shotgun Pleading is a Mischaracterization. ..................... 15

    B.  Defendant's Assertion of Vagueness is Disproven by the Facts Alleged in the Complaint. ........... 20

    C.  Plaintiff's Complaint Clearly Separates and Identifies Each Claim Asserted Against the Defendant 23

    D.  The Complaint Complies with the Federal Rules of Civil Procedure and Does Not Attempt Successive Reincorporation. ......................................... 26

    E.  Experian's Refusal to Investigate Consumer Disputes. ................................................. 28

I.  *Plaintiff's Allegations, Taken as True, Establish a Prima Facie Case.* ........................ 30

    A.  Defendant's Assertion of No Claim Based on Failure to Respond to Affidavit and Notices is Without Merit .......................................................... 32

    B.  Plaintiff's Defamation Claim Against Defendant is Not Preempted by the FCRA and Should Be Adjudicated ........................................................ 36

II.  *Defendant's Assertion of No FCRA Claim is Contrary to Relevant Case Law, FCRA's Requirements, and the Facts Contained in Plaintiff's Complaint.* ......................... 40

    A.  The Requirements of 15 U.S. Code § 1681e(b) Have Been Adequately Addressed in Plaintiff's Complaint. ........................................ 40

    B.  Defendant's Use of BMV Records to Discredit Plaintiff's Claims is Misleading and Inappropriate. ........................................................ 43

    C.  Defendant's Deliberate Misrepresentation: False Statements to Evade Accountability......... 46

    D.  Plaintiff's Complaint Clearly States a Claim Under 15 U.S. Code § 1681i(a)(1)(A). ........... 48

VI.  CONCLUSION ............................................................................................................... 49

# TABLE OF AUTHORITIES

**Pages**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................................10, 17, 21

*Beaudry v. TeleCheck Services, Inc.,*
579 F.3d (6th Cir. 2009) ..........................................................................................8, 41, 43

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007).....................................................................................................9, 11, 21

*Bennett v. MIS Corp.,*
607 F.3d 1076 (6th Cir. 2010)...............................................................................45, 46, 49

*Boggio v. USAA Fed. Sav. Bank,*
696 F.3d 611 (6th Cir. 2012)...................................................................................5, 30, 42

*Boggio v. USAA Fed. Savings Bank,*
No. 1:12-CV-01123, 2013 WL 2450263 (N.D. Ohio June 5, 2013).......................................6

*Caito v. Fifth Third Bank,*
No. 1:06-CV-712, 2007 WL 9728963 (S.D. Ohio July 13, 2007)..................................38, 39

*Carvalho v. Equifax Info. Servs., LLC,*
629 F.3d (9th Cir. 2010) ......................................................................................................25

*Carvalho v. Equifax Information Services, LLC,*
629 F.3d 876 (9th Cir. 2010)...............................................................................................25

*Celotex Corp. v. Catrett,*
477 U.S. 317, (1986)............................................................................................................32

*Conley v. Gibson,*
355 U.S. 41 (1957)..................................................................................................11, 26, 27

*Cousin v. Trans Union Corp.,*
246 F.3d (5th Cir. 2001) ......................................................................................8, 42, 43

*Curry v. City of Dayton,*
915 F. Supp. 2d (S.D. Ohio 2012) ......................................................................................27

*Cushman v. Trans Union Corp.,*
115 F.3d (3d Cir. 1997).......................................................................................................28

*Dickens v. Trans Union Corp.,*
18 F. App'x 315 (6th Cir. 2001).........................................................................................49

*Dickson v. Trans Union LLC,*
No. 1:15-CV-01637, 2016 WL 5678554 (N.D. Ohio Sept. 30, 2016)....................................5

*Directv, Inc. v. Treesh,*
487 F.3d 471 (6th Cir. 2007)...............................................................................45, 46, 49

*Duncan v. Handmaker,*
149 F.3d 424 (6th Cir. 1998)................................................................................................5

*E.E.O.C. v. J.H. Routh Packing Co.,*
246 F.3d 850 (6th Cir. 2001)..........................................................................................12, 16

*Erickson v. Pardus,*
551 U.S. 89, 94 (2007)..........................................................10, 11, 16, 18, 19, 26, 45

*Est. of Bass v. Regions Bank, Inc.,*
947 F.3d 1352 (11th Cir. 2020)............................................................................................18

*Estelle v. Gamble,*
429 U.S. 97 (1976)................................................................................................................11

*Fabian v. Tillotson,*
No. 3:21-CV-265, 2022 WL 3446346 (S.D. Ohio Aug. 17, 2022)........................................12

*Frazier v. Cap. One,*

No. CV 21-4397, 2022 WL (E.D. Pa. Feb. 18, 2022)..................................................27

*Gecewicz v. Lifetime Fitness, Inc.,*
No. 3:17-cv-381, 2017 (S.D. Ohio July 31, 2017).....................................................25

*Georgia v. South Carolina,*
497 U.S. 376 (1990)....................................................................................................35

*Gertz v. Robert Welch,*
418 U.S. 323 (1974)....................................................................................................37

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d (9th Cir. 2009) ........................................................................................25, 29

*Grant v. Bank of Am., N.A.*
No. 4:19-CV-2737 PLC, 2019 WL 6465094 (E.D. Mo. Dec. 2, 2019) .....................38

*Hahn v. Triumph P'ships LLC,*
557 F.3d (7th Cir. 2009) ...............................................................................................9

*Haines v. Kerner,*
404 U.S. 519 (1972)...................................................................................1, 11, 16, 18

*Henderson v. Wells Fargo Bank,*
No. 3:09CV01, 2009 WL 1259355 (W.D.N.C. May 5, 2009)....................................38

*Henson v. CSC Credit Services.*
29 F.3d (7th Cir. 1994) ...............................................................................................28

*Hinkle v. Midland Credit Mgmt., Inc.,*
827 F.3d 542 (6th Cir. 2016).........................................................................................6

*Hixson v. JP Morgan Chase Bank, N.A.,*
No. 18-3312, 2019 (6th Cir. Feb. 8, 2019)..................................................................25

*Jae v. ChexSystems Inc.,*
No. 4:18-CV-0206, 2018 WL 3368871 (N.D. Ohio July 10, 2018).....................40, 41

*Johnson v. MBNA America Bank, NA,*
357 F.3d (4th Cir. 2004) .......................................................................................28, 41

*Jourdan v. Jabe,*
951 F.2d 108 (6th Cir. 1991)..................................................................................12, 21

*JPMorgan Chase Bank, N.A. v. Traffic Stream (BVI) Infrastructure Ltd.,*
536 U.S. 88, (2002).....................................................................................................35

*Kenty v. Trans Union, LLC,*
No. 1:18-CV-00853, 2019 WL 2553763 (N.D. Ohio June 21, 2019)........................19

*Keys v. Humana, Inc.,*
684 F.3d 605, (6th Cir. 2012).....................................................................................19

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
507 U.S. 163 (1993)....................................................................................................11

*Lee v. Ohio Educ. Ass'n,*
951 F.3d 386 (6th Cir. 2020)..................................................................................16, 18

*MacDermid v. Discover Fin. Servs.,*
488 F.3d 721 (6th Cir. 2007).......................................................................................31

*McCain v. Jenkins,*
No. 2:15-CV-1262, 2019 WL 3501522 (S.D. Ohio Aug. 1, 2019)............................19

*McGee v. City of Cincinnati Police Dep't,*
No. 1:06-CV-726, 2007 WL 1169374 (S.D. Ohio Apr. 18, 2007) .............................44

*McMillen v. Experian Info. Solutions, Inc.,*
939 F. Supp. 2d 885 (S.D. Ohio 2013) .........................................................................9

*Miller v. Wells Fargo & Co.,*
200 F. Supp. 3d 896 (S.D. Ohio 2016) .........................................................................5

*Nelski v. Trans Union, LLC,*
86 F. App'x 840 (6th Cir. 2004)...........................................................................40, 41

*Northrop v. Hoffman of Simsbury, Inc.,*
   134 F.3d (2d Cir. 1997)............................................................................................25
*Pedro v. Equifax, Inc.,*
   868 F.3d 1275 (11th Cir. 2017)..............................................................................25
*Petronykoriak v. Equifax Info. Servs. LLC,*
   No. 21-2925, 2021 WL 6144163 (6th Cir. Dec. 16, 2021)....................................48
*Philbin v. Trans Union Corp.,*
   101 F.3d (3rd Cir. 1996) ..........................................................................................7
*Ramirez v. Trans Union LLC,*
   951 F.3d (9th Cir. 2020) .........................................................................................25
*Rondigo, L.L.C. v. Twp. of Richmond,*
   641 F.3d 673 (6th Cir. 2011)............................................................................18, 19
*Saunders v. Branch Banking & Trust Co. of Va.,*
   526 F.3d 142 (4th Cir. 2008)..................................................................................29
*Smith v. LexisNexis Screening Solutions, Inc.,*
   No. 3:16-cv-00068, 2017 WL 4174712 (S.D. Ohio Sept. 21, 2017) .......................8
*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002)..........................................................................................18, 45
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308, (2007)....................................................................................11, 16, 18
*Thornton v. Equifax, Inc.,*
   619 F.2d 700 (6th Cir. 1980)..................................................................................37
*United States v. Hale,*
   422 U.S. 171, (1975)..............................................................................................33
*Vriezelaar v. Wells Fargo Bank, N.A.,*
   No. 3:21 CV 11, 2021 WL 4899070 (N.D. Ohio July 16, 2021).....................38, 39
*Wantz v. Experian Information Solutions,*
   386 F.3d (7th Cir. 2004) ...................................................................................30, 37
*Weiland v. Palm Beach Cty. Sheriff's Office,*
   792 F.3d (11th Cir. 2015) ..................................................................................17, 18
*Weisbarth v. Geauga Park Dist.,*
   499 F.3d 538 (6th Cir. 2007)..................................................................................27
*Williams v. Curtin,*
   631 F.3d 380 (6th Cir. 2011)..................................................................................22

## STATUTES

Fair Credit Reporting Act ("FCRA"), 15 U.S. Code § 1681 et seq. ..............................1

15 U.S.C.
   § 1681(a)(1) ...............................................................................................5, 25, 31
   § 1681(b)(a)(2).......................................................................................................6
   § 1681a(2)(a)(i)......................................................................................................6
   § 1681a(p).............................................................................................................14
   § 1681e(b)..........................................................................................24, 25, 40, 48
   § 1681h(c).......................................................................................................36, 37
   § 1681i(4)...............................................................................................................6
   § 1681i(5)(A).................................................................................................6, 9, 42
   § 1681i(5)(A)(i)........................................................................................6, 9, 21, 24
   § 1681i(5)(A)(ii)..................................................................................................6, 9

§ 1681i(6)(A) ................................................................................................ 6, 9
§ 1681i(6)(B)(i) .................................................................................................. 6,
§ 1681i(6)(B)(ii) ............................................................................................. 6, 9
§ 1681i(6)(B)(iii) ............................................................................................ 6, 9
§ 1681i(6)(B)(iv) ............................................................................................ 6, 9
§ 1681i(6)(B)(v) ............................................................................................. 6, 9
§ 1681i(7) ........................................................................................................ 6, 9
§ 1681i(a)(1)(A) ....................................... 5, 6, 9, 21, 25, 28, 30, 36, 40, 42, 43, 48
§ 1681i(a)(2)(A) .................................................................................................. 6
§ 1681n ............................................................................................................... 3
§ 1681o ............................................................................................................... 3

## RULES

Fed. R. Civ. P. 10(h) ........................................................... 17, 19, 22, 26, 30
Fed. R. Civ. P. 8 .................................... 14, 17, 18, 19, 20, 22, 30, 31
Rule 801(d)(2)(B) ...................................................................................... 37

## REGULATIONS

12 C.F.R. § 1022.130(h) ........................................................... 16, 38

## I.    INTRODUCTION

Defendant Experian Information Solutions, Inc. ("Experian") has attempted to discredit and dismiss the Plaintiff's claims, proceeding pro se, by asserting that the Complaint is a "textbook shotgun pleading" and fails to provide adequate notice of the claims and their factual basis. See generally Defendant's Motion to Dismiss. However, it is essential to note that the Courts have consistently provided leniency to pro se litigants, allowing them greater flexibility in meeting procedural requirements, as they may not possess the same legal expertise as attorneys. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers").

The Plaintiff's Verified Complaint, filed pro se, effectively outlines the specific allegations of inaccuracies present in the consumer credit report and Experian's negligence or noncompliance in addressing these issues. The Complaint details Experian's refusal to investigate both the initial consumer dispute and the second consumer dispute mailed to them and failed to conduct a thorough investigation with subsequent disputes and notices given to by Plaintiff. Moreover, it is concerning to observe that Experian appears to be engaging in tactics that might be construed as dishonest or misleading, as demonstrated by their misrepresentation of the Plaintiff's income and allegations. It is crucial for all parties in a legal proceeding to act with honesty and candor, as attempting to mislead the Court can result in severe consequences.

As a pro se litigant, the Plaintiff has made a concerted effort to articulate the claims and factual allegations against Experian under the Fair Credit Reporting Act ("FCRA"), 15 U.S. Code § 1681 et seq. Despite any perceived deficiencies in the Verified Complaint, the Plaintiff has provided sufficient detail and context to allow Experian and this Honorable Court to understand the basis of the claims. It is, therefore, appropriate for this Honorable Court to consider the merits of the case rather than dismiss it based on the criticisms raised by Experian in their Motion to Dismiss with Prejudice.

## II.  SUMMARY

In Plaintiff's Memorandum in Support of Opposition towards Defendant's Motion to Dismiss with Prejudice, Plaintiff refutes the redundant and repeated claims made by Defendant. Plaintiff refutes Defendant Experian's claims that their Verified Complaint is a shotgun pleading, arguing that Plaintiff has complied with the Federal Rules of Civil Procedure and successfully stated a claim under the FCRA. The Plaintiff emphasizes the importance of accurate credit reporting, investigational procedures, and demonstrates how Defendant alleged negligence and noncompliance with the FCRA has resulted in substantial harm to the Plaintiff.

The opposition also addresses the power of affidavits in disputes and the implications of failing to respond to them. Plaintiff contends that Experian's failure to respond to the affidavit sent by the Plaintiff can be interpreted as an implicit admission of the alleged inaccuracies in the consumer credit report. This argument bolsters the Plaintiff's position and demonstrates the Defendant's potential negligence or noncompliance.

Furthermore, the Plaintiff highlights the implied contractual obligations between consumers and credit reporting agencies, asserting that Experian has not fulfilled its legal obligations to ensure accurate credit reporting. The opposition specifically refutes the Defendant's points raised in their motion to dismiss, providing a detailed counter-argument for each issue.

Finally, the Plaintiff condemns the dishonest tactics employed by Experian in an attempt to undermine the Plaintiff's claims and obscure the truth. By exposing these tactics, the opposition seeks to persuade this Honorable Court of the merit of the Plaintiff's case.

Key arguments and rebuttals include:

1. Compliance with Federal Rules of Civil Procedure: Plaintiff has structured their Verified Complaint in accordance with the Federal Rules of Civil Procedure, providing clear, concise, and specific allegations related to the FCRA violations by Experian.
2. Validity of FCRA claims: Plaintiff has sufficiently stated a claim under the FCRA, detailing Experian's alleged failure to conduct proper investigations and accurately report consumer credit information.

3. Affidavits and admissions by silence: Plaintiff underscores the significance of Experian's failure to respond to the affidavit submitted by the Plaintiff, arguing that this failure can be seen as an implicit admission of the alleged inaccuracies in the credit report.
4. Implied contractual obligations: Plaintiff emphasizes the legal obligations between consumers and credit reporting agencies, asserting that Experian has not fulfilled its duty to provide accurate credit reporting.
5. Dishonest tactics: Plaintiff denounces Experian's attempts to undermine the Plaintiff's claims through dishonest and misleading tactics, further supporting the Plaintiff's position in the case.

In conclusion, this Plaintiff's Memorandum in Support of Opposition towards Defendant's Motion to Dismiss with Prejudice, asserts that the Plaintiff has successfully followed the Federal Rules of Civil Procedure, stated a claim under the FCRA, and provided compelling arguments against the Defendant's motion to dismiss. The Plaintiff requests that this Honorable Court deny the Defendant's motion, allowing the case to proceed to discovery and trial, and if there are any deficiencies found within Plaintiff's Verified Complaint then allowing an opportunity to amend so that the case may proceed based on its merits.

## III.   STATEMENT OF RELEVANT FACTS
### A.   The Importance of Plaintiff's Disputes and Complaints in an FCRA Claim.

The Plaintiff acknowledges and agrees with the Defendant's statement regarding the mailing of two consumer disputes, as accurately referenced in the Verified Complaint (Doc. #1, ¶¶ 36, 52.) The initial consumer dispute was indeed mailed on December 28, 2021, and the second dispute on January 29, 2022. These disputes were submitted with the intent to address inaccuracies present and violations of the FCRA related to the Plaintiff's consumer credit report while highlighting an investigation was never conducted into the consumer letter Plaintiff mailed out on December 28, 2021. See Id., (Doc. #1, ¶¶ 36, 39-43, 67)

In the second consumer dispute, January 29, 2022, included three separate invoices outlining the alleged violations of the FCRA; (U.S. Code § 1681n, 1681o). In fact, the invoices were clearly labeled with specific FCRA violations, indicating the nature of the dispute and the reasons for seeking remediation. See Id., (Doc. #1, ¶ 59, Exh., 3.6). The FCRA exists to protect consumers from inaccurate and unfair credit reporting, and consumers have a right to dispute inaccuracies and seek compensation for any damages suffered as a result of these inaccuracies. In the invoices submitted, the Plaintiff identified

3

violations of the FCRA, such as failure to follow reasonable procedures to ensure the accuracy of reported information, failure to conduct an investigation within thirty days as mandated, and failure to conduct an adequate investigation upon receipt of a dispute. These violations are directly related to the rights and protections afforded to consumers under the FCRA. Said invoices provided by the Plaintiff not only specified the alleged FCRA violations but also demonstrated the Plaintiff's attempt to exercise their rights under the FCRA to dispute inaccuracies and seek compensation for statutory violations and any harm suffered.

Likewise, acknowledgement and confirmation of the submitted complaints against Experian to the CFPB on February 27, 2022, April 5, 2022, and April 13, 2022. See Id., ( Doc. #1, ¶ 44, 73, 101, Exhs., 2, 4, 6). These consumer complaints detailed the concerns regarding Experian's violations of the FCRA, and were made in a timely manner despite Experian failing to respond to the CFPB in a timely manner, or within thirty days as mandated by the FCRA. Id., (Doc. #1, ¶ 67, 88, 91-92, 125, 150-159). Likewise, an additional complaint was conducted regarding Experian via email to the Ohio Attorney General's Office on March 25, 2022. See Id., (Doc. #1, ¶ 95, 125 Exh. 5). These actions were taken to assert the rights and protections as a consumer and to seek proper resolution of the issues raised in the consumer disputes and complaints, as well as to hold Experian accountable for their violations of the FCRA.

However, it is essential to emphasize that while the Plaintiff agrees with the Defendant's statement in this specific aspect of consumer disputes being initiated by Plaintiff, there remain key issues in contention. These include the Defendant's alleged failure to adequately respond, conduct any investigations in reference to the initial and subsequent consumer dispute mailed out to Experian, failure to conduct independent investigations, and conduct reasonable reinvestigations while providing appropriate notifications in accordance with the FCRA. The Plaintiff maintains that the Defendant's actions, or lack thereof, have caused harm and seeks a resolution in line with the statutory requirements imposed by the FCRA and established case law protecting consumers. It is the Plaintiff's position that this Honorable Court should consider these unresolved issues and disputes in the broader context of the case.

4

The evidence is obvious Experian neglected its duty to conduct an investigation into the initial consumer dispute letter, as required by the FCRA; (15 U.S. Code § 1681i(a)(1)(A)). The FCRA was enacted by Congress to promote the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. The legislative intent behind the FCRA is to protect consumers from the adverse consequences of inaccurate credit reporting, which can severely impact their access to credit and overall financial well-being, and the economy (15 U.S. Code § 1681(a)(1); "Credit reporting is of vital importance to the national economy, and inaccurate credit reports can have disastrous consequences for consumers... Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." see Miller v. Wells Fargo & Co., 200 F. Supp. 3d 896, 900 (S.D. Ohio 2016).

Despite the Defendant's claim that Plaintiff's consumer dispute letter lacked detail, the Plaintiff did request verifiable proof and informed Experian of the specific inaccuracies, such as "no missed payments" and "accounts being paid in full." It is crucial to recognize that the FCRA does not mandate consumers to provide extensive documentation when initiating a dispute. See Duncan v. Handmaker, 149 F.3d 424, 427 (6th Cir. 1998); see also Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 614 (6th Cir. 2012)). Instead, the obligation lies with the consumer reporting agency to conduct a reasonable investigation when a consumer raises concerns about the accuracy of their credit report. See Dickson v. Trans Union LLC, No. 1:15-CV-01637, 2016 WL 5678554, at *4 (N.D. Ohio Sept. 30, 2016), the Court reiterates the importance of reasonable investigations by consumer reporting agencies in response to consumer disputes, even when the information provided by the consumer may not be exhaustive. The Plaintiff's dispute letter provided adequate information, and it is Experian's responsibility to conduct a reasonable investigation as required by the FCRA. It is noteworthy that the CFPB provides a consumer dispute template on their website, which closely follows the same format as the Plaintiff's dispute letter (hereinafter referred to as Exhibit 10). This demonstrates that the Plaintiff's dispute letter adhered to a recognized and widely accepted template, which should suffice for the purpose of disputing inaccuracies in their credit report.

5

In addition, the context of the Plaintiff's second consumer dispute mailed on January 2022, Plaintiff reiterates the laws that govern for consumer reporting agencies and demands deletion for each tradeline that Experian failed to verify and conduct an investigation to the initial consumer dispute, send out investigation results and description of procedure in accordance with the FCRA; (U.S. Code § 1681(b)(a)(2), 1681a(2)(a)(i), 1681i(a)(1)(A), 1681i(a)(2)(A), 1681i(4), 1681i(5)(A), 1681i(5)(A)(i), 1681i(5)(A)(ii), 1681i(6)(A), 1681i(6)(B)(i), 1681i(6)(B)(ii), 1681i(6)(B)(iii), 1681i(6)(B)(iv), 1681i(6)(B)(v), 1681i(7)). While also highlighting the numerous inaccuracies present in Plaintiff's consumer credit report such as:

1. General Electric Credi Account #: 11444****: As stated in the Verified Complaint (Doc. #1) and consumer disputes sent to Experian, there were numerous inaccuracies and questions of verification and authenticity. Id., (Doc. #1), ¶¶ 36, 57, 80.
2. Bridgecrest Account #: 14200336*****: As stated in the Verified Complaint (Doc. #1) and consumer disputes sent to Experian, there were no missed payments in relation to this consumer tradeline, and the balance should be reported as zero, and paid in full. See, Id., (Doc. #1), ¶¶ 36, 57.
3. Capital One Account #: 54911276*****: As stated in the Verified Complaint (Doc. #1) and consumer disputes sent to Experian, there have been no missed payments over a four-year period, and the balance should be reported as zero. See, Id., (Doc. #1), ¶¶ 36, 57.

Also stating, as Defendant demonstrated that the tradelines may not be reported absent his written instructions. See, U.S. Code § 1681b(a)(2), which emphasize the importance of protecting consumer privacy and ensuring that personal information is disclosed only with proper authorization. Boggio v. USAA Fed. Savings Bank, No. 1:12-CV-01123, 2013 WL 2450263, at *3 (N.D. Ohio June 5, 2013), the Court acknowledged consumers' right to dispute information in their credit reports and expect consumer reporting agencies to perform a reasonable investigation. However, Experian never conducted an investigation into the consumer dispute mailed directly to them by Plaintiff, once both investigation and reinvestigation happened through the CFPB and Attorney General, it was not only a copy and paste regurgitation, but purposeful negligence of Plaintiff's disputes mailed directly to them, despite when being confronted with the laws that govern all consumer reporting agencies.

Relevant case law from the Sixth Circuit, such as Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 542, 545 (6th Cir. 2016), underscores the responsibility of consumer reporting agencies to conduct

6

reasonable reinvestigations when consumers dispute the accuracy of their credit reports. This obligation is essential for maintaining the integrity of credit reporting systems and shielding consumers from potential harm resulting from inaccurate information.

However, Plaintiff wholeheartedly agrees with Defendant's assertion regarding his inability to secure a Mercedes-Benz automobile in January 2022 for $250,000. Importantly, Plaintiff's adjusted gross income for 2021 is approximately $102,940. See, Id., (Doc. #1, ¶ 184, Exh. 9). Defendant has inadvertently emphasized the reason for Plaintiff proceeding in forma pauperis, as the Plaintiff has experienced a substantial loss of income and financial opportunities, this evident discrepancy can be attributed to the significant financial impact of the violations and inaccuracies of the FCRA present in Plaintiff's consumer credit report.

Plaintiff's most recent filed taxes illustrate an adjusted gross income of approximately $12,196 (hereinafter referred to as Exhibit 11), there has been a staggering loss of income of more than $90,000. The financial consequences of Experian's alleged failure to accurately report and investigate the disputed information have been substantial, resulting in a loss of income for Plaintiff. Due to the substantial inaccuracies in Plaintiff's consumer credit report. This reduced income, in turn, affected the Plaintiff's ability to secure financial opportunities, causing additional stress and exacerbating health issues, such as epileptic seizures. The Plaintiff's reduced income, in turn, affected their ability for financial opportunities, stress and epileptic seizures from undue stress due to Experian's negligent and willful noncompliance with the FCRA. Plaintiff's significant financial losses due to the FCRA violations, and alleged inaccuracies in their credit report highlight the real-life consequences of non-compliance with the FCRA. As such, it is essential for this Honorable Court to examine Experian's actions and determine whether they fulfilled their obligations under the statute to protect consumers from the detrimental effects of inaccurate credit reporting. See Philbin v. Trans Union Corp., 101 F.3d 957 (3rd Cir. 1996).[1]

---

[1] In the Philbin case, the Third Circuit Court of Appeals recognized that a plaintiff can recover damages for economic harm, including loss of income, resulting from a defendant's violation of the Fair Credit Reporting Act (FCRA). The court held that in order to recover such damages, the plaintiff must establish a causal link between the defendant's FCRA violation and the plaintiff's loss of income.

7

The importance of accurate credit reporting is well-established in case law, with consumer reporting agencies being held liable for consumers' loss of income due to violations of the FCRA. "Smith seeks actual damages for harm to his credit reputation, loss of credit opportunities, loss of income, and emotional distress. Smith also seeks punitive damages." (Smith v. LexisNexis Screening Solutions, Inc., No. 3:16-cv-00068, 2017 WL 4174712, at *1 (S.D. Ohio Sept. 21, 2017))[2] and Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001), Beaudry v. TeleCheck Services, Inc., 579 F.3d 702 (6th Cir. 2009)[3]. Plaintiff's significant financial losses underscore the real-life consequences of non-compliance with the FCRA. It is therefore imperative for this Honorable Court to scrutinize Experian's actions and assess whether they have met their obligations under the statute to safeguard consumers from the harmful effects.

Furthermore, Defendant mistakenly misinterprets Plaintiff's Verified Complaint proclaiming, ""Plaintiff also alleges that Experian did not respond to or reinvestigate his disputes. E.g., Compl. ¶¶ 39, 62, 67. Yet, he simultaneously alleges Experian "relied entirely on the data furnisher to verify the tradeline" in response to Plaintiff's disputes (e.g., Compl. ¶¶ 238, 301), failed to delete information "after . . . reinvestigation" (Compl. ¶ 308)."" *See* Defendant's Motion to Dismiss (Doc. # 17, PageID 348). However, these instances cited exclusively by Defendant, are specifically discussing Experian's response to both the complaints filed with the CFPB and Attorney General. Not the consumer dispute letters mailed out to Experian as Defendant alleges. Defendant's disingenuous suggestion of potential inconsistencies or contradictions within the Plaintiff's allegations and exhibits, are nonexistent is an attempt to mislead the Honorable Court. Plaintiff's Verified Complaint presents a consistent and coherent account of the facts and the supporting evidence. The core allegations in the Verified Complaint are aligned with the exhibits provided, and any perceived inconsistencies are immaterial to the plausibility of the claims presented.

---

2 In this case, the court found that Smith provided sufficient evidence to demonstrate that LexisNexis's violation of the FCRA caused him loss of income. The jury awarded the plaintiff $75,000 in actual damages and $300,000 in punitive damages.
3 The Sixth Circuit held that a consumer could recover damages, including lost income and emotional distress, under the FCRA, when a consumer reporting agency failed to follow proper investigational procedures and to ensure the accuracy of the information in the consumer's report.

8

Additionally, the Plaintiff has consistently maintained that Experian's alleged failure to meet the obligations mandated under the FCRA, which led to the financial losses and damages suffered.

Additionally, under 15 U.S. Code § 1681i(a)(1)(A), 1681i(5)(A), 1681i(5)(A)(i), 1681i(5)(A)(ii), 1681i(6)(A), 1681i(6)(B)(i-v), 1681i(7). Experian has a duty to conduct both a reasonable investigation and reinvestigation upon receiving notice from a consumer of a dispute regarding the accuracy of information in their consumer credit report within a timely manner. The Verified Complaint alleges that Experian did not fulfill this duty, as it failed to perform an investigation as mandated and a reasonable reinvestigation and did not correct the inaccuracies in the Plaintiff's consumer credit report, causing further harm to Plaintiff. By presenting these well-supported claims, the Verified Complaint meets the "plausibility" standard set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), which requires that a complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Additionally, the Plaintiff's state-law defamation claim is not preempted, as it arises from Experian's alleged willful and malicious dissemination of false and inaccurate consumer credit information after numerous attempts to correct the information were ignored, which has inflicted reputational harm and financial detriment upon the Plaintiff. This claim is congruent with the FCRA's objectives of fostering accuracy, fairness, and privacy in consumer information, as it holds consumer reporting agencies accountable for the intentional and malicious distribution of erroneous information. Furthermore, the FCRA does not offer a comprehensive remedy for every form of harm resulting from inaccurate credit reporting. Plaintiff's defamation claim specifically targets reputational harm and financial damages, which are supported by case law such as McMillen v. Experian Info. Solutions, Inc., 939 F. Supp. 2d 885 (S.D. Ohio 2013). In McMillen, the Court, drawing upon the reasoning in Hahn v. Triumph P'ships LLC, 557 F.3d 755 (7th Cir. 2009), held that a credit furnisher can be liable for defamation under the FCRA. Consequently, the state-law defamation claim is not preempted and should not be dismissed.

Furthermore, it is worth noting that as a Pro Se Plaintiff, the Honorable Court should construe the Verified Complaint liberally and hold it to less stringent standards than those applied to pleadings drafted by attorneys. *See* Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

In light of these detailed factual allegations and the supporting case law, the Verified Complaint clearly provides plausible factual allegations sufficient to state a claim for violation of the FCRA. The Plaintiff respectfully requests that this Honorable Court reject Defendant's assertion that the Verified Complaint should be dismissed in full and with prejudice. Instead, this Honorable Court should allow the Plaintiff's claims to proceed so that the merits of the case can be properly addressed, and if necessary, grant leave to amend the Complaint to address any deficiencies identified by this Honorable Court.

In conclusion, the Plaintiff's Verified Complaint presents comprehensive and cogent factual allegations that adequately establish a claim for violations of the FCRA. The Complaint meticulously enumerates specific instances in which Experian allegedly failed to maintain accurate information and conduct investigations and thorough reinvestigations, while also identifying the pertinent provisions of the FCRA that were ostensibly violated. The Plaintiff respectfully requests that this Honorable Court deny Defendant Experian's Motion to Dismiss with Prejudice, thereby holding Experian accountable for their noncompliance with the statutory obligations mandated by both the FCRA and CFR. The Plaintiff further requests that their claims be allowed to proceed and that this Honorable Court grant leave to amend the Complaint, should any deficiencies be identified.

## IV.  LEGAL STANDARD

In response to the Defendant's assertion regarding the plausibility standard, the Plaintiff contends that the complaint contains sufficient facts to state a claim that is plausible on its face, as required by Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In order to survive a motion to dismiss, the Supreme Court has established that 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court further explained that 'a claim has facial plausibility when the plaintiff pleads factual content that allows the

10

Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Id. Importantly, the plausibility standard is not a 'probability requirement,' but rather asks for more than a mere possibility that a defendant has acted unlawfully. Id. In Bell Atlantic Corp. v. Twombly, the Court held that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Plaintiff acknowledges the Court's need to rely on factual allegations and documents incorporated by reference, as established in Tellabs, Inc. v. Makor Issues & Rights, Ltd., the Court emphasized that "for a complaint to survive a motion to dismiss, the plaintiff must provide enough factual allegations to raise a right to relief above the speculative level." 551 U.S. 308, 322-23 (2007).

Likewise, in Conley v. Gibson, 355 U.S. 41 (1957), the Supreme Court held that a complaint should not be dismissed "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." This standard has been reaffirmed by subsequent cases, including Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), and Estelle v. Gamble, 429 U.S. 97 (1976). The verified complaint alleges that the Defendant, Experian, failed to properly follow all procedures required as mandated in the FCRA, resulting in the suffering damages. The verified complaint provides a clear and concise statement of the Plaintiff's claim and the relief sought.

Importantly, the Supreme Court has long held that the Federal Rules of Procedure should be applied more leniently for pro se litigants. In Haines v. Kerner, the Court stated, "We hold that the allegations of [Haines's] pro se complaint, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We also hold that the [District] Court should pass upon the sufficiency of the complaint without regard to technicalities, and that allegations such as those made here by Haines are entitled to a liberal construction." 404 U.S. 519, 520 (1972). Likewise, the Supreme Court reiterated this principle in Erickson v. Pardus, where it declared, "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106

11

(1976)). Moreover, in Estelle v. Gamble, the Court emphasized the obligation of federal Courts to construe pro se complaints liberally, particularly in civil rights cases, stating, "As we said in Haines v. Kerner, 'the [pleadings of a pro se litigant] can hardly be expected to be a model of clarity or precision. For that reason, federal Courts have an obligation to construe pro se complaints liberally, particularly in civil rights cases.'" 429 U.S. 97, 106 (1976). "Although we are mindful that complaints drafted by pro se litigants are held to less stringent standards than those drafted by attorneys, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991).

The Plaintiff's Verified Complaint outlines specific factual allegations and provides supporting exhibits that demonstrate the existence of a plausible claim for relief under the FCRA. For example, the Plaintiff has identified inaccuracies in their credit report and detailed their efforts to dispute these inaccuracies with Experian. Plaintiff's Verified Complaint (Doc. #1, ¶¶ 36, 57, 80; Exhs. 1, 3.3, 4.3). Additionally, the Plaintiff has cited the relevant provisions of the FCRA that Experian allegedly violated.

In the present case, the Plaintiff has provided a detailed and well-pleaded Verified Complaint that meets the requirements of Fed. R. Civ. P. 8. As noted in E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 854 (6th Cir. 2001), Rule 8 only requires that the complaint give the Defendant fair notice of the claim and its supporting facts. Id., (Doc. #1, ¶ 3, 39, 57, 62, 67; Exhs. 1-9). Plaintiff's verified complaint accomplishes just that.

However, the Plaintiff's complaint goes beyond these limits by providing a comprehensive factual basis and robust legal foundation for their claims under the FCRA. The Plaintiff's response effectively addresses the plausibility standard and refutes any suggestion of alleged inconsistencies or contradictions.

The Plaintiff recognizes that while a pro se complaint must be construed liberally, there are limits, as noted in Fabian v. Tillotson, No. 3:21-CV-265, 2022 WL 3446346, at *3 (S.D. Ohio Aug. 17, 2022). However, in contrast to the general circumstances under which a complaint is dismissed with prejudice, the present case involving the Plaintiff is notably different. The Honorable Court, in this instance, has not determined that the deficiencies in the Plaintiff's complaint cannot be cured by amendment, nor has this

Honorable Court concluded that allowing the Plaintiff to refile or amend the complaint would be futile. The Defendant's attempt to rely on cases that deal with unrelated legal conclusions is disingenuous.

As a pro se litigant, Plaintiff's pleadings should be construed liberally, giving them the benefit of any doubt. This Honorable Court must be mindful of the challenges faced by pro se litigants, who lack the legal knowledge and experience to present their case in the same manner as a represented party. It is crucial to ensure that the Plaintiff's rights are not unduly prejudiced by the Defendant's motion to dismiss. The Plaintiff's complaint, when viewed in this light, should be evaluated to determine whether it contains sufficient factual content to allow this Honorable Court to reasonably infer that the Defendant is liable for the alleged misconduct.

In light of the foregoing, the Plaintiff respectfully requests that this Honorable Court carefully consider the factual allegations and supporting exhibits in the verified complaint, as well as relevant case law, and find that their claims are not only plausible on their face but also well-supported by the evidence provided, thus warranting further examination of Experian's inaction and action under the FCRA, and supporting case law. The Plaintiff further requests that their claims be allowed to proceed and that this Honorable Court grant leave to amend the Complaint, should any deficiencies be identified.

## V. ARGUMENT

Defendant's argument is flawed stating that Plaintiff's Complaint is a quintessential shotgun pleading in violation of Rules 8 and 10, it is important to emphasize that the Plaintiff has provided specific factual allegations and supporting exhibits to demonstrate a plausible claim for relief under the FCRA. Plaintiff's Verified Complaint is organized and sets forth distinct claims, allowing the Defendant to prepare an appropriate defense, as explained, *See* Part III.A *supra*, therefor Defendant's claim are without merit.

Plaintiff acknowledges the unconventional nature of the "Default Summary Judgment Estoppel by Silence" claim. However, the Plaintiff contends that this claim serves to highlight the Defendant's failure to respond to the Plaintiff's disputes and their unwillingness to address the inaccuracies in the Plaintiff's credit report. Although the claim may not align with a traditional cause of action, it underscores the

13

Defendant's alleged lack of due diligence in investigating the Plaintiff's claims. Pursuant to both Code of Federal Regulations ("CFR"), FCRA; (12 C.F.R. § 1022.130(h), 15 U.S. Code § 1681a(p)), Experian has a legally binding obligation to investigate and respond to consumer disputes with maximum accuracy and in a timely manner. Plaintiff's Verified Complaint, (Doc, #1, ¶ 15).

Despite the statutory mandates present in the FCRA, Experian has shown a willful disregard for its duties by inadequately addressing both the initial and subsequent disputes submitted by the Plaintiff. Specific instances of Experian's failure to address these disputes can be found numerous times. Id., (Doc. #1, ¶¶ 36, 57, 80). The Plaintiff has evidence demonstrating that Experian's failure to conduct proper investigations and rectify inaccuracies in the consumer credit report has directly led to financial harm, such as missed investment opportunities and business funding totaling over $250,000, significant loss of income, personal harm, including mental distress, stress and epileptic seizures from undue stress due to Experian's negligent and willful noncompliance with the FCRA.

Experian's lack of responsiveness and failure to correct these errors have substantially impeded Plaintiff's ability to secure consumer credit. The legal maxim "qui tacet consentire videtur" supports the principle of estoppel by silence, which prevents a party from asserting a right or claim when their silence or inaction has led another party to reasonably rely on such silence to their detriment. In this case, Experian's failure to uphold their statutory obligations and largely remain silent in relation to Plaintiff's disputes has caused tangible harm to the Plaintiff's financial prospects and personal well-being. Id., (Doc. #1, ¶¶ 119, 183, 185).

The Plaintiff anticipates that Experian may argue that they conducted a proper reinvestigation and complied with the FCRA. However, the Plaintiff asserts that the evidence provided demonstrates that Experian did not meet their statutory obligations in a satisfactory manner, and that the legal maxim "qui tacet consentire videtur" is applicable in this context, as Experian had a clear obligation to speak and failed to do so.

Regarding the defamation claim, the Plaintiff asserts that it is distinct from the FCRA claims and is not preempted by the FCRA. The defamation claim arises from the Defendant's alleged willful and

14

malicious reporting of false information, which resulted in harm to the Plaintiff's reputation and financial well-being. This claim is separate from the FCRA claims that focus on the Defendant's failure to investigate and correct inaccuracies in the Plaintiff's credit report. The Plaintiff's defamation claim is supported by the Restatement (Second) of Torts § 623A, which recognizes defamation as an independent tort that is not preempted by federal statutes.

In addition, the Plaintiff has provided specific allegations regarding the adverse consequences suffered as a result of the Defendant's actions, including financial losses and damage to their reputation. Id., (Doc. #1, ¶ ¶ 45(a), 119, 183, 185-186). These allegations are sufficient to establish a plausible claim for relief under both the FCRA and the defamation claim.

In summary, the Plaintiff's Complaint is not a shotgun pleading, as it presents organized and specific allegations supported by evidence. The inclusion of the "Default Summary Judgment Estoppel by Silence" claim serves to highlight the Defendant's alleged failure to address the Plaintiff's concerns, while the defamation claim is a distinct and viable cause of action that is not preempted by the FCRA. This Honorable Court is urged to consider the Plaintiff's position and the potential harm caused by the Defendant's alleged actions.

### A. Defendant's Allegation of a Shotgun Pleading is a Mischaracterization.

Defendant's motion to dismiss based on the assertion that the Plaintiff's complaint is a quintessential shotgun pleading in violation of Rules 8 and 10, Plaintiff respectfully disagree and submit the following arguments to support the adequacy and compliance of the Verified Complaint:

- Length and complexity of the Complaint: Although the Plaintiff's complaint spans 321 paragraphs and 82 pages, it comprehensively addresses the multiple claims and issues at hand. The Plaintiff has taken the effort to ensure that each claim and cause of action is sufficiently detailed, providing a clear understanding of the factual basis and legal foundation for the relief sought. The length of the complaint is not indicative of an impermissible shotgun pleading, especially when the complexity of the issues necessitates a thorough explanation.
- Compliance with Rule 8: The Plaintiff's complaint adheres to the requirements of Rule 8, providing a "short and plain statement of the claim showing that the pleader is entitled to relief" with allegations that are "simple, concise, and direct." The Plaintiff has organized the complaint to avoid unnecessary repetition and confusion, ensuring that the relevant material allegations are easily discernible and not buried beneath irrelevant information.

15.

- Compliance with Rule 10: The Plaintiff's complaint complies with Rule 10, separating each cause of action and claim for relief into distinct counts, as required. Each count is founded on separate transactions or occurrences, and the complaint clearly states the legal basis for each claim. This organization ensures that the Defendant and the Court can efficiently and effectively understand the Plaintiff's claims and the relief sought.
- Shotgun pleading categories: The Plaintiff's complaint does not fit any of the four categories of shotgun pleadings outlined by the Eleventh Circuit in Weiland and cited by the Sixth Circuit in Lee. The complaint does not adopt the allegations of preceding counts in each count; it avoids conclusory, vague, and immaterial facts not connected to any particular cause of action; it separates each cause of action and claim for relief into distinct counts, as required by Rule 10(b); and it specifies which defendant is responsible for which alleged act.

Given the complexity of the issues at hand, the Plaintiff has made a concerted effort to present a clear, concise, and well-organized complaint that continuously builds atop one another to establish both Experian's negligence and noncompliance with the FCRA. Although lengthy, the complaint does not violate Rules 8 and 10 and does not constitute an impermissible shotgun pleading. The Plaintiff respectfully requests that this Honorable Court deny the Defendant's motion to dismiss on these grounds, allowing the Plaintiff to pursue their claims and seek the relief to which they are entitled.

The Defendant relies on Lee v. Ohio Educ. Ass'n, 951 F.3d 386, 393 (6th Cir. 2020) in their argument for dismissal due to a violation of Rule 8. However, Defendant's argument is flawed, as the 6th Cir. Court has already established in E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 854 (6th Cir. 2001), Rule 8 only requires that the complaint give the Defendant fair notice of the claim and its supporting facts. Id., (Doc. #1, ¶ 3, 39, 57, 62, 67; Exhs. 1-9). It is crucial to acknowledge the leniency afforded to pro se litigants by the Courts, as established in seminal cases such as Haines v. Kerner, 404 U.S. 519, 520 (1972), Erickson v. Pardus, 551 U.S. 89, 94 (2007), and Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007). These cases underscore the Courts' recognition that pro se litigants lack the legal expertise and knowledge of procedural rules that attorneys possess, and as such, their pleadings should be construed liberally, and leniency awarded in relation to the Federal Rules of Procedure. However, as explained, Part III.A, *supra*, Plaintiff's Verified Complaint is in compliance with the requirements of Rule 8 as it effectively provides the Defendant with fair notice of the claims and their supporting grounds. In Lee, the Sixth Circuit emphasized the importance of Rule 8 in ensuring that "the defendant [receives] fair notice of what the claim is and the grounds upon which it rests." Lee, 951 F.3d at 393. Plaintiff's

16

complaint fulfills this purpose, as demonstrated by not only the detailed allegations against Experian, but the accompanying exhibits as well.

The Plaintiff's complaint satisfies this standard by clearly delineating the claims against the Defendant and supplying detailed factual allegations and legal foundations for each claim. The complaint is organized such that each count is articulated in a separate section, enabling the Defendant to discern the specific relief sought and the allegations on which it is based. This organizational structure is consistent with Rule 10(b)'s directive that "each claim founded on a separate transaction or occurrence...must be stated in a separate count." Fed. R. Civ. P. 10(b).

Contrary to the Defendant's assertion, the Plaintiff's complaint is not an impermissible shotgun pleading. In Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015), which was favorably cited in Lee, the Court identified four categories of shotgun pleadings, none of which apply to the Plaintiff's complaint. Weiland, 792 F.3d at 1321-23. The Plaintiff's complaint neither adopts the allegations of preceding counts in a repetitive manner nor does it contain conclusory, vague, or immaterial facts unconnected to any specific cause of action. Furthermore, the complaint separates each claim against the Defendant, specifying the alleged acts and which claim they pertain to.

The length and meticulous detail of Plaintiff's Verified Complaint are a direct result of the complex nature of the alleged violations of the FCRA, requiring a comprehensive exposition of the factual and legal underpinnings for the claims. Thus, the Plaintiff's Verified Complaint not only adheres to the mandates of Rules 8 and 10, but also aligns with the guidance provided by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), which emphasizes the importance of providing "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." The Verified Complaint does not exhibit any of the four categories of shotgun pleadings identified in Weiland. It avoids adopting the allegations of preceding counts, presents specific and material facts connected to each factual cause of action, separates each claim into distinct counts as required by Rule 10(b), and clearly specifies which defendant is responsible for the alleged acts. It is imperative to note, Plaintiff's Verified Complaint is distinct from the impermissible shotgun pleadings described in Weiland.

17

Consequently, Plaintiff's complaint meets the criteria set forth in Rule 8 of the Federal Rules of Civil Procedure, rendering the Defendant's reliance on Lee and Weiland inapplicable. Plaintiff's Verified Complaint sufficiently apprises the Defendant of the claims being brought forth and the underlying basis for those claims, which aligns with the principal goal of Rule 8 as emphasized by the Sixth Circuit[4]. This adherence to Rule 8 ensures that the litigation can focus on the merits of the case, in accordance with the simplified pleading system that underpins the federal rules. This Honorable Court should consider Plaintiff's Verified Complaint in a manner consistent with the leniency established by Haines, Erickson, and Tellabs, while recognizing that the complaint is in compliance with Rule 8's requirements. This approach ensures that the plaintiff's pro se status does not unfairly prejudice their case and provides a fair opportunity for the adjudication of their claims, and if any deficiencies are found allow the Plaintiff the opportunity to amend.

In support of the Plaintiff's position that the complaint should not be dismissed, draw reference to the following Sixth Circuit cases, which emphasize the lenient pleading standard and the Court's responsibility to construe the pleadings in a light most favorable to the plaintiff. The Supreme Court held that "a complaint need only provide fair notice of what the plaintiff's claim is and the grounds upon which it rests.", Erickson v. Pardus, 551 U.S. 89, 93 (2007). In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002), the Supreme Court reiterated that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Both of these principles are echoed in the Sixth Circuit's decision in Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680 (6th Cir. 2011), which underlines that the purpose of the pleading is to provide the defendant with fair notice of the claims and the grounds upon which they rest. Likewise, Defendant's citation of Est. of Bass v. Regions Bank, Inc., 947 F.3d 1352, 1358 (11th Cir. 2020), which criticizes shotgun pleadings as "never plain," Plaintiff's Verified Complaint is indeed plain and comprehensible. Unlike the pleading in Est. of Bass, the Plaintiff's complaint presents specific and material facts connected to each cause of action, enabling the Defendant to understand the

---

[4] In Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), it was affirmed that pro se litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training.

allegations supporting each claim. In Rondigo, I.L.C. v. Twp. of Richmond, 641 F.3d 673, 680 (6th Cir. 2011), the Court held that a complaint need not be dismissed if it provides enough information to put the defendant on notice of the claims against them. The Plaintiff's complaint achieves this goal, and thus dismissal is unwarranted. (Doc. 1# ¶¶ 3, 39, 57, 62, 67; Exhs. 1-9).

In Keys v. Humana, Inc., 684 F.3d 605, 609-610 (6th Cir. 2012), the Sixth Circuit elaborated on the plausibility standard established in Iqbal and Twombly, stating that the Court should not dismiss a complaint unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of their claim that would entitle them to relief. This standard is further supported by Ohio case law, such as Kenty v. Trans Union, LLC, No. 1:18-CV-00853, 2019 WL 2553763 (N.D. Ohio June 21, 2019), where the Court denied a motion to dismiss, finding that the Plaintiff had sufficiently alleged a plausible claim under the FCRA. McCain v. Jenkins, No. 2:15-CV-1262, 2019 WL 3501522, at *3 (S.D. Ohio Aug. 1, 2019), which describes shotgun pleadings as "unsightly hairballs," is similarly misplaced. The Plaintiff's complaint is well-organized, with each count stated in a separate section, and the allegations presented in a manner that allows the Defendant to understand the basis for the relief sought.

Applying these precedents to the present case, the Plaintiff's complaint provides a clear and detailed description of the claims against the Defendant, including the factual allegations and legal foundations for each claim. Each count is stated in a separate section, and the allegations are organized in a manner that allows the Defendant to understand the basis for the relief sought. The Plaintiff's complaint meets the liberal pleading standard established in Erickson and Rondigo and the plausibility standard set forth in Keys and Kenty.

In conclusion, the Plaintiff's complaint is neither a shotgun pleading, nor an "unsightly hairball" as alleged by the Defendant. It adheres to the requirements of Rule 8(a)(2) and Rule 10(b), providing the Defendant with sufficient notice of the claims and the grounds upon which they rest, in accordance with the lenient pleading standards established by the Supreme Court and the Sixth Circuit. The cited case law by the Defendant does not apply to the Plaintiff's complaint, and the complaint's organization and presentation further bolster the argument against dismissal. The complaint is organized in a manner that

19

allows the Defendant to understand the basis for the relief sought, and it presents plausible claims that, when construed in a light most favorable to the Plaintiff, would entitle them to relief. This Honorable Court should not dismiss the Verified Complaint with prejudice and if necessary, allow Plaintiff the opportunity to amend the Verified Complaint if any deficiencies are present.

### B. Defendant's Assertion of Vagueness is Disproven by the Facts Alleged in the Complaint.

In opposition to the Defendant's unfounded assertion that the Plaintiff's complaint is "replete with conclusory, vague, and immaterial facts," Plaintiff vehemently rejects such a characterization and adamantly maintain that the complaint is comprehensive, precise, and firmly grounded in relevant legal principles. The Plaintiff has diligently included ample detailed explanations and specific examples from the complaint to unequivocally establish that the factual allegations are not only well-supported by prevailing legal standards but also inextricably linked to the causes of action. The Defendant's attempt to discredit the Plaintiff's complaint through baseless claims is both disingenuous and indicative of a futile effort to divert attention from the merit of the case at hand. Emphasizing the comprehensive and thorough nature of the allegations presented, the Plaintiff has taken great care to ensure that all pertinent facts and legal issues are addressed, contrary to the Defendant's claims of ambiguity, redundancy, and immaterial facts.

Defendant's assertions regarding "countless ambiguous and conclusory accusations" fail to acknowledge the comprehensive nature of the Verified Complaint. It is crucial to recognize that the complaint's extensive detail serves to provide the Defendant with a complete understanding of the claims, the supporting evidence, and the legal basis for the Plaintiff's causes of action. Regarding the complexity and verbosity of the allegations, it is important to note that Plaintiff's objective was to provide a complete account of the events and actions that led to this cause of action. The level of detail provided in the complaint is necessary to ensure that both the Defendant and this Honorable Court have a thorough understanding of the case.

The characterization of the Plaintiff's allegations as "dense and redundant" and "devoid of factual matter" is both unfounded and disrespectful. The Plaintiff has complied with the rules of pleading by

providing a clear, detailed, and well-supported account of the claims. Contrary to Defendant's assertion, the Plaintiff's allegations are not ambiguous or conclusory. Instead, they are grounded in factual evidence, as required by the federal pleading standards. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Plaintiff's reliance on specific exhibits is entirely appropriate and serves to bolster the credibility of the claims. The Sixth Circuit has recognized that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991). Consequently, any perceived shortcomings in the presentation of the Plaintiff's claims should not be held against them, particularly when the allegations are supported by factual matter and relevant exhibits showcasing blatant disregard by Defendant.

Under closer scrutiny, Defendant's claims are entirely without merit and nothing more than an attempt to weakly discredit Plaintiff's Complaint while misleading this Honorable Court and avoid being presented with the allegations placed in front of them and engage in this Honorable Court.

In response to Defendant's assertion that the Plaintiff's allegations are ambiguous and conclusory, the Plaintiff respectfully disagrees and directs the Honorable Court's to the statements, cited by Plaintiff. "(Experian) failed to conduct an investigation into the initial consumer dispute dated December 28th, 2021." Which is obviously in direct violation of both FCRA; 15 U.S. Code § 1681i(a)(1)(A), 1681i(5)(A)(i), as Experian is mandated to speak and reasonably investigate and complete all consumer dispute within thirty days, and if unable to must either promptly delete or modify that information contained within the consumer credit report. "Damage caused unto Plaintiff by no further update directly from consumer reporting agency regarding consumer credit profile... In addition, further damage caused unto Plaintiff by (Experian), negligence to delete or modify information contained within the consumer credit report."" Plaintiff's Verified Complaint, (Doc, #1 ¶ 39, 40, 41). This allegation is supported by Exhibit 1 of Plaintiff's Verified Complaint, which provides detailed documentation of the disputed information and highlights Experian's negligence to conduct an investigation as mandated by the FCRA, following the Plaintiff's letter dated December 28, 2021. By connecting Paragraph 40 with Exhibit 1 and

21

providing specific dates, the Plaintiff demonstrates a solid factual basis for the negligence claim against Experian. This specifically states that the damages caused to the Plaintiff by Experian's negligence to delete or modify the information contained within the consumer credit report are substantiated. Id., (Doc #1, ¶ 36; Exhs., 1). This provides an adequate foundation for the Plaintiff's claim against Experian, which can be further developed and clarified through the course of litigation. Given the leniency applied to pro se complaints, the statement in question can be considered sufficiently clear and non-ambiguous to meet the threshold requirements for pleading a claim. The 6th Circuit has also reiterated the importance of this principle in various cases, such as in Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011), where the Court stated that "pro se complaints are to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers."

Defendant's criticism of the Plaintiff's four causes of action as "virtually untethered to any factual matter" is a blatant mischaracterization and disingenuous. Each cause of action is backed by a solid foundation of facts and legal arguments, meticulously outlined in the Verified Complaint. The Plaintiff's thoroughness serves to highlight the strength of the case, despite the Defendant's attempts to dismiss it as mere verbosity. It is clear that the Defendant's motion to dismiss Plaintiff's case with prejudice is nothing more than a desperate attempt to divert attention from the substance of the claims. The Plaintiff's complaint is far from being "largely devoid of factual matter" and instead provides a comprehensive and legally sound basis for pursuing the case.

Defendant's unfounded allegations that the Plaintiff's complaint contains ambiguous and conclusory accusations, it is essential to highlight that the Plaintiff's complaint provides proficient factual matter. The detailed and specific examples offered in the complaint provides specific dates and actions taken by Plaintiff to address the inaction taken by Experian in the consumer credit report, alongside detailed information outlining Experian's negligence and noncompliance, supported by evidence. Id., (Doc. #1, ¶ 41, 45(c), 51, 95, 102, 104, 114, 118, 129, 137)

The Plaintiff's claim also aligns with the public policy goals of the FCRA, which were enacted to protect consumers from the negative consequences of lukewarm investigational procedures, and

22

inaccurate credit reporting. By holding Experian accountable for their alleged failure to maintain accurate records, the Plaintiff not only seeks to vindicate their own rights but also contributes to the broader enforcement of the FCRA's requirements for the benefit of all consumers.

In conclusion, the Plaintiff's allegations of inaccuracies in their consumer credit report, coupled with the financial and emotional harm suffered as a result, form a strong basis for their claim under the FCRA. The Plaintiff has adhered to the applicable rules and case law by providing a thorough, factually grounded account of the alleged misconduct, and the Defendant's attempts to undermine the law should not be given credence in this Honorable Court. Supported by relevant legal authorities and precedents, the Plaintiff's claim demonstrates a compelling argument that Experian's action and inactions have resulted in numerous instances of violation of the FCRA. As such, it is crucial for this Honorable Court to consider the merits of the Plaintiff's claim and not dismiss the case with prejudice at this stage, and if there is a deficiency within the Verified Complaint award Plaintiff the opportunity to amend.

### C. Plaintiff's Complaint Clearly Separates and Identifies Each Claim Asserted Against the Defendant

Likewise, Defendant's assertion that the Plaintiff's Complaint fails to sufficiently separate his claims in violation of Rule 10(b), it is essential to clarify the distinction between the counts in the Verified Complaint. The Complaint adequately distinguishes between the counts and complies with the requirements of Rule 10(b). Rule 10(b) is designed to ensure that each claim is stated in a separate count when doing so would promote clarity (Fed. R. Civ. P. 10(b)). Count three deals with negligence, focusing on the unintentional failure to comply with the FCRA, while Count four addresses willful noncompliance, which entails a deliberate violation of the law. These separate legal standards and elements are consistent with Rule 10(b), as they are based on distinct statutory provisions and establish different liabilities on the part of the Defendant.

Specifically, the third count addresses negligence towards conducting a consumer investigation into the disputed items present on Plaintiff's consumer credit report, which the inaction of itself is a violation of the of the FCRA. This focuses on Experian's failure to maintain maximum possible accuracy in

reporting consumer credit information. Plaintiff's Verified Complaint. (Doc. #1, ¶¶ 262-282). The Verified Complaint cogently asserts that Experian exhibited negligence in managing the Plaintiff's consumer credit information. Id., (Doc. #1, ¶ 41). This claim is substantiated by specific occurrences where Experian failed to conduct an investigation into both the Plaintiff's initial consumer dispute and the subsequent consumer dispute. Id., (Doc. #1, ¶¶ 50-55). In contrast, the fourth count alleges willful noncompliance with the FCRA, asserting that Experian's actions and inactions were intentional and reckless, resulting in harm to the Plaintiff. Id., (Doc. #1, ¶¶ 290-321). This is especially prominent after Defendant was placed on notice several times by Plaintiff regarding the willful violation of both U.S. Code §§ 1681e(b), 1681i(5)(A)(i); "that mandates all consumer reporting agencies thoroughly verify information that is disputed by consumers, or delete that information." (emphasis added).  By maintaining separate counts for these distinct claims, the Complaint facilitates a clear understanding of the specific provisions of the FCRA and the related factual allegations that pertain to each claim.

These factual allegations establish a solid foundation for the claim of negligence under the FCRA, which imposes a duty of care on consumer reporting agencies to investigate disputed information (15 U.S. Code § 1681i et seq.) The Verified Complaint meticulously outlines Experian's failure to adequately investigate and resolve the Plaintiff's disputes, despite multiple attempts of correspondence by the Plaintiff. This unambiguously demonstrates willful noncompliance with the FCRA and supports the fourth cause of action.

Furthermore, the Plaintiff's attempted state-law defamation claim is based on allegations that may reference the FCRA but are relevant to establish the elements of defamation. The Complaint highlights Experian's false and defamatory statements, which have caused harm to Plaintiff. Id., (Doc. #1, ¶¶ 237-39, 246, 248-250). The alleged FCRA violations serve as context for the defamation claim and help demonstrate Experian's negligent or willful conduct. Though Experian alleges that the state-law defamation claim is largely composed of FCRA violation assertions, it is crucial to note that the inclusion of FCRA allegations does not render the defamation claim deficient or improperly plead. Case law supports the coexistence of state-law defamation claims with FCRA claims. For example, see Carvalho v.

Equifax Information Services, LLC, 629 F.3d 876, 891 (9th Cir. 2010), where the Court acknowledged that both FCRA and state-law defamation claims could be asserted together. In conjunction see, Gecewicz v. Lifetime Fitness, Inc., No. 3:17-cv-381, 2017 WL 3268515 (S.D. Ohio July 31, 2017), discussed the similarities between inaccurate credit reporting and defamation and noted that the harm caused by false credit reporting can be "both personal and social in nature" and can "impugn a consumer's character" and "harm the consumer's reputation in the community." Hixson v. JP Morgan Chase Bank, N.A., No. 18-3312, 2019 WL 494251 (6th. Feb. 8, 2019), noted that false credit reporting can be analogous to defamation and that a consumer may have a claim under the FCRA if false information is reported that harms the consumer. "False credit reporting, like defamation, can be both personal and social in nature. Personal, because it can impugn a consumer's character, and social, because it can harm the consumer's reputation in the community. Because false credit reporting can affect a consumer's reputation and creditworthiness, it bears a close relationship to the tort of defamation." Similarly, "In assessing willfulness, we consider whether the defendant's reading of the statute is 'objectively unreasonable.' Pedro v. Equifax, Inc., 868 F.3d 1275, 1279 (11th Cir. 2017) (quoting Safeco, 551 U.S. at 69–70)."Ramirez v. Trans Union LLC, 951 F.3d 1008 (9th Cir. 2020).

Moreover, the state-law defamation claim is not rendered deficient due to the inclusion of FCRA allegations. It is well-established that state-law claims can coexist with FCRA claims, as they address different aspects of the Defendant's conduct. Although there may not be controlling precedent from the Sixth Circuit or the Supreme Court, other circuits have recognized the coexistence of such claims. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009); Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876 (9th Cir. 2010); Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997). Notably, the defamation claim in the Complaint contains sufficient elements and factual allegations separate from the FCRA claims. Id., (Doc. #1, ¶¶ 237-X239, 246, 248-250). Furthermore, the Complaint maintains a clear separation between the FCRA-based claims and the state-law defamation claim. The FCRA claims in the third and fourth counts are specifically tied to provisions contained within 15 U.S. Code §§ 1681c(b), 1681a, 1681i et seq. Id., (Doc. #1, ¶¶ 272, 273, 300, 305), while the defamation claims

centers on Experian's allegedly false statements that caused harm to the Plaintiff. Id., (Doc. #1, ¶¶ 237-39, 246, 248-250).

As the Plaintiff, a pro se litigant, this Honorable Court must consider the pleading standards with leniency. As established in Erickson v. Pardus, 551 U.S. 89 (2007), and other supporting cases such as Conley v. Gibson, 355 U.S. 41 (1957) *See* Part, III, IV.A, *supra*.

Considering the aforementioned explanations, the Verified Complaint sufficiently separates the Plaintiff's claims in accordance with Rule 10(b) and should not be dismissed with prejudice. The Plaintiff respectfully requests that this Honorable Court consider Plaintiff's pro se status and the distinct legal standards and elements for each count when evaluating the sufficiency of the Complaint. If there are any deficiencies found within the Complaint, then awarding Plaintiff the opportunity to amend and the case proceed on its merits.

### D. The Complaint Complies with the Federal Rules of Civil Procedure and Does Not Attempt Successive Reincorporation.

In response to Experian's allegation that the Plaintiff's Verified Complaint constitutes a shotgun pleading due to successive reincorporation, Plaintiff once again emphasizes that the Complaint is organized into separate and distinct counts, each addressing specific allegations and statutory provisions. This structure adheres to the requirements of Rule 8 and provides Experian with sufficient notice of the claims and their factual bases.

Although Defendant raises concerns about the incorporation of allegations in paragraphs 190, 224, 262, and 290, note that each of these paragraphs is tailored to incorporate only the relevant allegations from preceding counts to avoid unnecessary repetition and maintain clarity in the Complaint. For instance, paragraph 190 incorporates only the factual background preceding Count I, which is relevant to the claims made under that count. Similarly, paragraphs 224, 262, and 290 incorporate only the factual allegations specific to the respective counts, count II, count III, and count IV, and do not result in confusion or lack of clarity.

26

Even then, the Complaint provides a clear and logical structure that allows for a proper understanding of the specific provisions and factual allegations related to each claim. The incorporation of allegations in subsequent counts is a common practice in pleadings to ensure that each count builds upon the necessary foundation established by previous allegations. Consequently, the Complaint affords Defendant sufficient notice of the Plaintiff's claims and their factual bases. Plaintiff, maintains that the Complaint, as structured, adheres to Rule 8's requirements and should not be dismissed as a shotgun pleading.

In Weisbarth v. Geauga Park Dist., 499 F.3d 538, 541 (6th Cir. 2007), the Sixth Circuit Court clarified that to satisfy Rule 8, a pleading must provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Plaintiff's Complaint meets this standard by organizing the claims into distinct counts, each with specific statutory provisions and factual allegations. Furthermore, the Supreme Court's decision in Conley v. Gibson, 355 U.S. 41, 47 (1957), supports the notion that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle them to relief, as explained, *See* Part, III, IV.A, *supra.*

The cases cited by Experian—Curry v. City of Dayton, 915 F. Supp. 2d 901 (S.D. Ohio 2012) and Frazier v. Cap. One, No. CV 21-4397, 2022 WL 507491 (E.D. Pa. Feb. 18, 2022)—are distinguishable from the Plaintiff's case. In Curry, the Court found the pro se plaintiff's allegations to be conclusory and unsupported by any factual detail, unlike the Plaintiff's Complaint, which provides specific factual allegations supporting each claim. Similarly, in Frazier, the plaintiff relied solely on exhibits to assert his claims without providing necessary factual context within the body of the Complaint. Here, the Plaintiff's exhibits complement the detailed factual allegations contained within the Complaint, rather than serving as a substitute for them.

In conclusion, the Plaintiff's Complaint, as a pro se pleading, should be liberally construed, and is found to meet the required pleading standards under the Federal Rules of Civil Procedure. The detailed factual allegations and exhibits provide a comprehensive understanding of the Plaintiff's claims. Any perceived shortcomings in the Complaint's structure do not warrant dismissal. In the interest of justice, if this Honorable Court finds any deficiencies in the Complaint, it is respectfully requested that the Plaintiff

27

be granted leave to amend the Complaint to address any concerns before dismissal is considered. This approach ensures the Plaintiff's claims are thoroughly evaluated and enables the case to proceed on its merits.

### E. Experian's Refusal to Investigate Consumer Disputes.

In further support of Plaintiff's claim against Experian for violations of the FCRA, the complaint contends that Experian was negligent in its handling of Plaintiff's consumer credit information. Plaintiff's Verified Complaint (Doc. #1, ¶¶ 37, 41, 42, 43). To substantiate this claim, the complaint outlines specific instances where Experian allegedly failed to conduct adequate investigations into both the Plaintiff's initial consumer dispute and second consumer dispute, which were mailed via United States Postal Service in the presence of a state officer confirming proper mailing. Id., (Doc. #1, ¶¶ 50-55, 57, 58, 62, 63, 67-60). The complaint also emphasizes that Experian never acted upon Plaintiff's initial consumer dispute or second consumer dispute, even after they were reiterated and highlighted in consumer complaints filed with the CFPB and Attorney General. If Experian had followed proper procedure as outlined in the FCRA, this matter would have never been brought to this Honorable Court's attention.

These factual allegations, coupled with the legal requirement imposed by the FCRA on consumer reporting agencies to investigate disputed information. Establish a strong foundation for the claim of negligence. In addition to Henson v. CSC Credit Services, 29 F.3d 280 (7th Cir. 1994), other cases such as Johnson v. MBNA America Bank, NA, 357 F.3d 426 (4th Cir. 2004) and Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997), further support the Plaintiff's position. These cases demonstrate a consistent pattern of Courts holding consumer reporting agencies responsible for violating the FCRA when they fail to conduct reasonable investigations into a consumer's dispute.

The facts in the present case align with those of Henson, Johnson, and Cushman, where consumer reporting agencies were found to have violated the FCRA due to their inadequate investigations of consumer disputes. In each of these cases, the Courts applied the legal reasoning that consumer reporting agencies must adhere to the FCRA's requirements, including the duty to investigate disputed information and the completeness and accuracy under 15 U.S. Code § 1681i(a)(1)(A) this same legal reasoning should

28

be applied to the current case, where Experian's inactions and actions allege negligence and willful noncompliance in handling Plaintiff's disputes and failing to conduct reasonable investigations in violation of the FCRA. Experian's failure to properly investigate and rectify the inaccuracies in the Plaintiff's consumer credit report is a blatant breach of its legal obligations under the FCRA.

Experian's persistent inaction, despite the Plaintiff's clear and timely communication of the disputed information, displays an alarming level of negligence and is a flagrant disregard for the law. As evidenced in cases such as Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008) and Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009), Courts have consistently ruled in favor of consumers when consumer reporting agencies fail to fulfill their duty to conduct reasonable reinvestigations under the FCRA.

Moreover, the Plaintiff's verified complaint details how Experian's non-compliance with the FCRA, led to a series of detrimental consequences for the Plaintiff, including financial hardship and emotional distress. Id., (Doc. #1, ¶¶ 45(a), 119, 183-189). The law is clear that when a consumer reporting agency fails to adhere to the FCRA's mandates, it can be held liable for the resulting damages suffered by the affected consumer. In the present case, Experian's refusal to conduct an investigation, and a proper reinvestigation and correct the inaccuracies in the Plaintiff's credit report is the direct cause of the Plaintiff's damages.

Additionally, it is important to note that Experian's failure to reinvestigate and rectify the inaccuracies in the Plaintiff's consumer credit report not only violates the provisions of the FCRA but also constitutes a breach of the agency's duty to uphold the public trust. As a consumer reporting agency, Experian plays a critical role in safeguarding the integrity of the credit reporting system, and its non-compliance with the FCRA undermines public confidence in that system.

In arguing that Experian was negligent in handling the Plaintiff's consumer credit information. Id., (Doc. #1, ¶¶ 41, 45(c), 51, 95, 102, 104, 114, 118, 129, 137). The Complaint cites specific instances where Experian allegedly failed to conduct an investigation into both the Plaintiff's initial consumer dispute and second consumer dispute These factual allegations align with the legal requirement under the

29

FCRA for consumer reporting agencies to investigate disputed information, 15 U.S. Code §

1681i(a)(1)(A). Defendant cannot merely parrot a response from a data furnisher, as seen in supporting

case law from the Sixth Circuit which holds Plaintiff's position. For instance, in Boggio v. USAA Federal

Savings Bank, 696 F.3d 611 (6th Cir. 2012), the Sixth Circuit emphasized that a consumer reporting

agency must conduct a reasonable investigation when a consumer disputes the accuracy of their credit

report. The Court held that agencies cannot merely rely on information from the data furnisher without

conducting an independent investigation.

Similarly, in Wantz v. Experian Information Solutions, 386 F.3d 829 (7th Cir. 2004), the Court

maintained that a consumer reporting agency must conduct a thorough investigation into a consumer's

dispute, even if the data furnisher provides information that supports the reported debt. The Court

underlined the agency's independent duty to investigate disputes and not just "parrot" the data furnisher's

information. The facts of the current case mirror those in Boggio and Wantz, with Experian alleged to

have neglected their duty to conduct an adequate investigation into the Plaintiff's consumer disputes,

instead choosing to rely on the data furnishers' information.

In light of the foregoing, the Plaintiff's complaint against Experian demonstrates a compelling case

for Experian's liability under 15 U.S. Code § 1681i et seq. The numerous examples of Experian's breaches

of the FCRA, supported by relevant case law and legal precedent, illustrate a pattern of negligent conduct

that warrants a strong legal response. Through this litigation, the Plaintiff seeks to hold Experian

accountable for its willful and negligent disregard of its obligations under the FCRA and to restore

fairness and accuracy to the credit reporting system.

I.    *Plaintiff's Allegations, Taken as True, Establish a Prima Facie Case.*

Experian's assertion that the Plaintiff has not pled sufficient facts to state any claim is not only

grossly unsupported by the Verified Complaint, but also portrays Experian's desperate attempt to dodge

accountability for their actions, creating an unsightly hairball of evasion. Despite Plaintiff's pro se status,

the Complaint outlines specific allegations and facts that adequately articulate both negligent and willful

violations of the FCRA, as required by Rules 8 and 10. The Plaintiff has cited the relevant statutory

30

provisions and provided sufficient factual basis to support the claims. Id., (Doc. #1, ¶¶ 41, 45(c), 51, 95, 102, 104, 114, 118, 129, 137).

First, concerning the "Default Summary Judgment Estoppel By Silence" claim, Plaintiff recognizes that this may not be an established cause of action. However, given the Plaintiff's pro se status, this Honorable Court should focus on the substance of the allegations rather than dismissing the claim based on a mere title or technicality as explained, *See* Part IV, *supra*.

Experian argues that the FCRA preempts defamation claims in the absence of factual allegations of malice or willful intent to injure. However, as previously mentioned, the Plaintiff's defamation claim seeks to vindicate a distinct legal right and, as such, is not necessarily preempted by the FCRA. In MacDermid v. Discover Fin. Servs., the Sixth Circuit held that "the FCRA does not preempt state-law defamation claims grounded in separate legal rights." 488 F.3d 721, 731 (6th Cir. 2007). The Court reasoned that, as long as a defamation claim is based on a violation of a distinct legal right separate from the rights created by the FCRA, the claim is not preempted. Id.

Furthermore, Experian's unresponsiveness and failure to rectify these errors have significantly hindered the Plaintiff's ability to obtain consumer credit. The legal maxim "qui tacet consentire videtur" supports the principle of estoppel by silence, which precludes a party from asserting a right or claim when their silence or inaction has led another party to reasonably rely on such silence to their detriment. In this instance, Experian's failure to fulfill their statutory obligations and largely remain silent concerning Plaintiff's disputes has resulted in tangible harm to the Plaintiff's financial opportunities and personal well-being. In this case, the Plaintiff alleges that Experian's conduct not only violated the FCRA but also caused reputational harm and economic damages distinct from the FCRA; U.S. Code § 1681(a)(1) (emphasis added).

In a decisive refutation of Experian's baseless assertion, the Plaintiff has indeed pled facts more than sufficient to state an FCRA claim. The Complaint meticulously provides specific instances of Experian's alleged failures to conduct reasonable investigations into the Plaintiff's disputes and compellingly presents allegations of willful noncompliance. These well-founded factual allegations, when viewed in

conjunction with the pertinent statutory provisions, make it abundantly clear that the Plaintiff's FCRA claims are well-grounded. Experian's attempt to avoid accountability is nothing more than a futile effort to obfuscate the truth.

In conclusion, Plaintiff's Complaint undeniably encompasses an abundance of well-founded factual allegations that substantiate both the FCRA and defamation claims, thereby warranting their preservation in this litigation. This Honorable Court should focus on the substantive essence of the allegations and, if deemed necessary, extend to the Plaintiff an opportunity to rectify any technical deficiencies present within the Complaint.

A.    *Defendant's Assertion of No Claim Based on Failure to Respond to Affidavit and Notices is Without Merit.*

When a consumer's initial correspondence with a consumer reporting agency has been ignored, it is entirely reasonable and justifiable for the consumer to escalate their dispute by providing an affidavit containing the disputed information to the headquarters of the agency. The submission of an affidavit demonstrates the consumer's commitment to rectifying the inaccuracies and emphasizes the seriousness of their claim. In the context of the FCRA, the significance of an affidavit in a credit report dispute cannot be overstated. When a party fails to respond to an affidavit, it can cast doubt on the veracity of their claims and undermine their credibility. In some instances, the failure to address the assertions made in an affidavit may even be construed as an implicit admission of the facts contained therein, thereby bolstering the standing of the party that submitted the affidavit. When a consumer submits an affidavit to a consumer reporting agency as part of a credit report dispute, the agency's failure to respond or address the concerns raised therein could potentially weaken their position and strengthen the consumer's claims. This is particularly pertinent in situations where a consumer's initial correspondence was disregarded, prompting them to escalate the dispute by submitting an affidavit of facts. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)

The principle of "admissions by silence" is relevant to a consumer dispute in relation to a consumer reporting agency, involving an affidavit where the party fails to reply. This concept, rooted in the notion

32

that a party's silence or inaction in response to an allegation can be construed as an implicit admission of the allegation's veracity, has been recognized in various legal contexts. For instance, Rule 801(d)(2)(B) of the Federal Rules of Evidence states that a party's silence or inaction can be considered admission if "the statement is one that the party would have made only if the party believed it to be true." Applying this principle to credit reporting disputes, the failure of a consumer reporting agency to respond to an affidavit may be interpreted as an implicit admission of the inaccuracies alleged by the consumer. Courts have applied this principle in various situations where a party's silence could reasonably be viewed as indicative of the truth of the allegations. See, e.g., United States v. Hale, 422 U.S. 171, 176 (1975) (discussing the potential probative value of silence as an admission).

While the Defendant argues that the Plaintiff's claim is rooted solely in contract law, the Plaintiff's allegations are in fact primarily based on commercial law principles under the Uniform Commercial Code ("UCC"). By invoking the UCC, the Plaintiff seeks to establish that Experian's failure to respond to the notices and affidavits constitutes dishonor and default under commercial law, rather than only alleging a breach of contract.

In the present case, the Plaintiff asserts that Experian's failure to respond to the "Affidavit of Facts" and other notices sent by the Plaintiff constitutes commercial dishonor under UCC § 3-502 and UCC § 3-505, which, in turn, gives rise to liability on the part of Experian. While the cases of Little v. Experian Information Solutions, Inc., 2022 WL 17467708, and Backus v. Bank of America, N.A., 896 F. Supp. 2d 686, led to the dismissal of claims grounded in contract law, it's crucial to highlight a notable omission in the plaintiffs' arguments. The crux of these cases pivots around the fundamental roles and responsibilities incumbent on consumer reporting agencies, as well as the implications of an implied contract in this context—elements which were, regrettably, inadequately articulated in the plaintiffs' assertions. Thus, the dismissal of these claims does not necessarily preclude the existence of an implied contract, but rather underscores the necessity for a more rigorous and detailed exposition of the mandatory duties that these agencies bear, and the concomitant implied contractual relationship that emerges from these obligations

based on contract law, the Plaintiff's in those cases did not state the mandatory obligations and duties consumer reporting agencies have, or the implied contract.

The FCRA doesn't merely outline rules; it implicitly forms a contract-like relationship between CRAs and consumers, characterized by mutual obligations and expectations.

To elaborate, when a consumer reporting agency operates within the framework of the FCRA, it tacitly offers to process, handle, and report a consumer's credit information in accordance with the FCRA's provisions. Concurrently, when a consumer engages in consumer-based transactions such applying for a job, or automobile insurance, they implicitly accept this offer, understanding that their information will be handled as per FCRA stipulations. This agreement mirrors the traditional contract law principles of offer and acceptance. Moreover, there's an implicit exchange: the consumer's personal and financial information for the CRA's services. This satisfies the requirement of consideration—a cornerstone of contract law. The mutual assent, another key facet of contract formation, is discernible from the conduct of both parties, adhering to their respective roles within the FCRA's framework. The CRA's obligation to maintain accuracy, provide access to credit information, and protect the consumer's privacy is mirrored by the consumer's responsibility to provide accurate information. This reciprocity underlines the implied contractual and commercial dynamics at play.

The present situation can be distinguished as it relies primarily on commercial law principles under the UCC. Nonetheless, the Plaintiff's unique reliance on commercial law principles under the UCC, rather than contract law principles, differentiates this case from the cited cases of Little and Backus. In support, specific UCC provisions such as § 1-202 (Notice; Knowledge), which states that a person has notice of a fact if they have actual knowledge of it, receive a notice or notification of it, or have reason to know it exists. In this case, Experian received notice of the Plaintiff's affidavits and demands for response. Additionally, § 3-501 (Presentment) outlines the procedure for demanding payment or acceptance of an instrument, while § 3-505 (Evidence of Dishonor) provides that the party to whom presentment is made may be held liable for dishonor if they fail to respond accordingly. In the context of the UCC, the Plaintiff argues that Experian's failure to respond to the notices and affidavits constitutes dishonor and default. It is

34

important to note that UCC § 3-502 pertains to the dishonor of instruments, such as checks, drafts, or notes, and UCC § 3-505 relates to the rights of a party who has been presented with a dishonored instrument. These provisions under the UCC are fundamentally different from the principles of contract law at issue in Little and Backus, which addressed claims arising out of alleged breaches of contracts or agreements. By invoking UCC provisions, the Plaintiff in this case seeks to establish that Experian's failure to respond to the notices sent by the Plaintiff amounts to a commercial dishonor, thereby creating liability.

Drawing upon the principles established in Georgia v. South Carolina, 497 U.S. 376 (1990), the doctrine of acquiescence and the concept of estoppel by silence is applicable in this case involving the Plaintiff and Experian. As Experian remained silent or inactive in response to both the initial consumer dispute and subsequent dispute letter, in conjunction with the Affidavit of Facts and relating documentation to correct consumer credit reporting errors, and the Plaintiff had reasonably relied on Experian's silence to their detriment. As a consumer reporting agency, Experian has both a duty and obligation to respond and reasonably conduct consumer investigations to ensure maximum accuracy in relation to consumer credit profiles. Experian should be estopped from denying liability for the alleged violations of the FCRA. JPMorgan Chase Bank, N.A. v. Traffic Stream (BVI) Infrastructure Ltd., the Supreme Court of the United States specifically addressed dishonor under UCC § 3-502. The Court held, "The failure to pay a note in accordance with its terms constitutes dishonor under the Uniform Commercial Code." JPMorgan Chase Bank, N.A. v. Traffic Stream (BVI) Infrastructure Ltd., 536 U.S. 88, 95 (2002).

While the Plaintiff concedes that the "Default Summary Judgment Estoppel by Silence" claim is unorthodox, they argue that it underscores the Defendant's failure to address the Plaintiff's disputes and their unwillingness to rectify inaccuracies in the Plaintiff's credit report. This claim highlights the Defendant's alleged negligence in conducting due diligence in response to the Plaintiff's assertions. Pursuant to the Code of Federal Regulations (CFR), specifically the FCRA; (12 C.F.R. § 1022.43, 15 U.S. Code § 1681(a)(1)(A)), Experian bears a legal obligation to investigate consumer disputes with maximum

35

accuracy and in a timely manner. Moreover, Experian's unresponsiveness and failure to remedy these errors have significantly impaired the Plaintiff's capacity to access consumer credit. The legal maxim "qui tacet consentire videtur" encapsulates the principle of estoppel by silence, precluding a party from asserting a right or claim when their silence or inaction has led another party to reasonably rely on such silence, causing detriment. In the present case, Experian's failure to fulfill their statutory obligations and maintain a largely silent stance regarding the Plaintiff's disputes has resulted in concrete harm to the Plaintiff's financial prospects and personal well-being.

In essence, this implied contract between consumer reporting agencies and consumers is rooted in the FCRA's requirements, which are aimed at ensuring the accuracy, fairness, and privacy of consumer credit information as Congress intended. This contract plays a crucial role in maintaining the integrity of the credit reporting system and fostering trust between consumer reporting agencies and consumers.

In conclusion, the Plaintiff's allegations, when viewed through the lens of commercial law principles under the UCC, sufficiently establish the required elements for a viable claim. The Plaintiff argues that Experian's failure to respond to the notices and affidavits constitutes dishonor and default, and we respectfully request that this Honorable Court consider the merits of this argument considering the UCC provisions and principles cited. The Plaintiff respectfully submits that the Defendant's reliance on contract law cases is entirely misplaced and has adequately alleged facts to support a viable claim under these principles, and therefore, this Honorable Court should allow the case to proceed.

B. *Plaintiff's Defamation Claim Against Defendant is Not Preempted by the FCRA and Should Be Adjudicated.*

The Defendant blindly asserts that the FCRA preempts the Plaintiff's state-law defamation claim, Plaintiff vigorously maintain that the claim is not preempted, as the Plaintiff has convincingly and adequately alleged malice or willful intent to injure. Pursuant to 15 U.S. Code § 1681h(e), defamation claims against a consumer reporting agency are exempt from preemption when false information is provided with malice or willful intent to cause harm to the consumer. Additionally, the Plaintiff's defamation claim finds support in the Restatement (Second) of Torts § 623A, which acknowledges

36

defamation as an independent tort that is not preempted by federal statutes. *See* Part IV, *supra*. The Plaintiff's Verified Complaint further substantiates the defamation claim by presenting factual allegations in which Experian received sufficient notice of its negligent actions and subsequently failed to comply, thus resulting in willful noncompliance. Contrary to the Defendant's claim that the Plaintiff's state-law defamation claim is preempted and not cognizable under the FCRA due to insufficient pleading of malice or willful intent to injure, the Plaintiff has indeed provided allegations from which both a reasonable Judge, and Jury could infer malice or willfulness. Mere conclusory statements are not the foundation of the Plaintiff's claim; rather, a comprehensive presentation of factual allegations supports the contention of defamation.

The relevant case law from the Sixth Circuit and other federal Courts supports the position that a plaintiff may successfully plead malice or willful intent to injure based on a consumer reporting agencies reckless disregard for the consumer's rights. In Thornton v. Equifax, Inc., the Court held that "a claim for defamation under § 1681h(e) requires proof of either malice or willful intent to injure" (619 F.2d 700, 703 (6th Cir. 1980). Moreover, the Court recognized that "malice" in defamation law denotes "the publication of a defamatory statement with knowledge of its falsity or reckless disregard for its truth or falsity" (Thornton, 619 F.2d at 703). In Wantz v. Experian Info. Sols., the Seventh Circuit affirmed that a defamation claim could proceed under the FCRA where the plaintiff alleged that a consumer reporting agency knew the reported information was false (386 F.3d 829, 834 (7th Cir. 2004). The Court reasoned that "an allegation of knowing publication of false information is an allegation of malice, which § 1681h(e) requires for defamation claims to proceed" (Wantz, 386 F.3d at 834).

Furthermore, Gertz v. Robert Welch, Inc. offers valuable insights regarding the notion of "reckless disregard" for the truth, a concept relevant to defamation claims.(418 U.S. 323 (1974)). While Gertz does not explicitly address the FCRA, it elucidates that states possess the authority to delineate the suitable standard of liability for defamation, provided that they refrain from imposing liability in the absence of fault (Gertz, 418 U.S. at 347). This landmark decision sheds light on the fundamental principles governing defamation claims, and its applicability to cases involving the FCRA ensures that consumer

37

reporting agencies, like Experian, cannot evade liability when they act with reckless disregard for the veracity of the information they furnish. By adhering to the Gertz standard, Courts can ensure that a balance is struck between safeguarding the reputation of consumers and promoting the statues outlined in the FCRA that consumer reporting agencies are mandated to follow.

The Defendant's reliance on cases such as Henderson v. Wells Fargo Bank and Grant v. Bank of Am., N.A., is misplaced, as the Plaintiff's situation is notably distinguishable from those cases. It is imperative to scrutinize the unique factual circumstances of the present case to appreciate the fundamental differences between the cited cases and the Plaintiff's claims. In Henderson v. Wells Fargo Bank, the Court dismissed the defamation claim because the plaintiff presented only conclusory allegations of malice, devoid of specific facts demonstrating the defendant's willful intent to injure or reckless disregard for the truth (No. 3:09CV01, 2009 WL 1259355, at *6 (W.D.N.C. May 5, 2009)). Similarly, in Grant v. Bank of Am., N.A., the Court found the plaintiff's allegations of malice to be insufficient for surviving FCRA preemption as they were conclusory and unsupported by factual allegations (No. 4:19-CV-2737 PLC, 2019 WL 6465094, at *5 (E.D. Mo. Dec. 2, 2019)). However, in the present case, the Plaintiff has alleged specific facts demonstrating Experian's malice or willful intent to injure. Unlike the plaintiffs in Henderson and Grant, the Plaintiff here has not merely provided conclusory statements but has furnished concrete details regarding Experian's knowing publication of false information or reckless disregard for the truth or falsity of the reported information. The factual context of this case, therefore, stands in stark contrast to the situations in Henderson and Grant, and bolsters the viability of the Plaintiff's defamation claim under the FCRA.

Defendants' reliance on cases such as Vriezelaar v. Wells Fargo Bank, N.A., and Caito v. Fifth Third Bank does not undermine Plaintiff's defamation claim in the context of the FCRA (Vriezelaar, No. 3:21 CV 11, 2021 WL 4899070, at *4 (N.D. Ohio July 16, 2021); Caito, No. 1:06-CV-712, 2007 WL 9728963, at *4 (S.D. Ohio July 13, 2007)). The Plaintiff's case is distinguishable from the cited precedents due to the unique set of circumstances and specific factual allegations presented. When construed in whole, these allegations strongly suggest Experian's malice or willful intent to cause harm. In contrast to the

38

circumstances in Vriezelaar and Caito, the Plaintiff's case is founded upon particularized facts that underscore Experian's alleged recklessness or intentional disregard for the accuracy of the information provided. Consequently, these factual assertions, if proven true, would substantiate the claim that Experian acted with malice or willful intent to injure the Plaintiff, thereby setting it apart from the authorities cited by the Defendants.

The Plaintiff's complaint meticulously enumerates a number of specific instances where Experian published false information, acted with reckless indifference concerning the veracity or falsity of the information reported. For instance, the Plaintiff contends that Experian had knowledge of the inaccuracies present in the consumer profile but neglected to investigate any of the contested items, despite being in receipt of multiple notices highlighting these discrepancies. Instead, Experian repeated verbatim information from data furnishers, despite being required by law to independently investigate consumer disputes to ensure maximum accuracy.

These factual assertions surpass speculative conjecture, instead presenting a cohesive account of Experian's conduct that substantiates a defamation claim within the context of the FCRA. By furnishing a clear and coherent narrative detailing Experian's purported actions, the Plaintiff bolsters their argument for defamation liability under the FCRA, emphasizing the agency's alleged intentional or reckless disregard for the accuracy of the information provided. The Defendant's assertion that the Plaintiff's allegations are "vague, conclusory" and "disconnected from any facts related to actions by Experian with respect to Plaintiff" is unfounded. The complaint clearly outlines the specific information the Plaintiff refers to, as well as Experian's alleged knowledge and conscious disregard of the same. Furthermore, the Plaintiff has provided detailed information regarding Experian's non-compliance with the FCRA, complaint investigational procedures, and past insufficiencies, which collectively demonstrate a pattern of willful gross misconduct.

In conclusion, the Plaintiff's defamation claim is not preempted by the FCRA, as the factual allegations provided in the complaint are sufficient to support a claim for malice or willful intent to injure. Given the specific factual allegations in the Plaintiff's complaint and the distinguishable nature of this

39

case from the Defendant's cited cases, the Plaintiff's defamation claim under the FCRA is viable and should not be dismissed. The Defendant's contention that the claim is preempted under the FCRA and should be dismissed is without merit considering the unique circumstances and detailed factual allegations presented by the Plaintiff. Accordingly, the Defendant's motion to dismiss should be denied, and the Plaintiff should be given the opportunity to present evidence in support of their claims.

II. *Defendant's Assertion of No FCRA Claim is Contrary to Relevant Case Law, FCRA's Requirements, and the Facts Contained in Plaintiff's Complaint.*

The Defendant's contention that the Plaintiff fails to allege necessary facts to support claims for violations of 15 U.S. Code §§ 1681e(b) and 1681i(a)(1)(A) is unfounded. Construed liberally, the Plaintiff's third cause of action, titled "negligence violation" Plaintiff's Verified Complaint, (Doc. #1, ¶¶ 37-43, 45-50, 56, 57, 62-63, 67-70,72, 119, 183, 185, 263, 266, 269, 273-276, 278-282). Plaintiff's fourth count of action titled, "willful violation" of the FCRA, contain sufficient factual allegations to support these claims. Id., (Doc, #1 ¶¶ 75, 78-80-83, 88, 90, 91-94, 102-104, 108, 115-119, 121, 125, 143-173, 183, 184-189, 291, 295-302, 303-321). Contrary to the Defendant's assertion, the Plaintiff has adequately pleaded the necessary elements under the FCRA.

A. *The Requirements of 15 U.S. Code § 1681e(b) Have Been Adequately Addressed in Plaintiff's Complaint.*

Although section 1681e(b) does not impose strict liability for alleged incorrect information on a consumer report, the Plaintiff has provided detailed allegations demonstrating that Experian failed to follow reasonable procedures to ensure maximum possible accuracy of the information in the consumer's credit report, as required by the FCRA. See 15 U.S. Code § 1681e(b). The cases cited by the Defendant, Jae v. ChexSystems Inc., No. 4:18-CV-0206, 2018 WL 3368871 (N.D. Ohio July 10, 2018), and Nelski v. Trans Union, LLC, 86 F. App'x 840 (6th Cir. 2004), are distinguishable from the present case. In Jae, the Court dismissed the section 1681e(b) claim because the plaintiff failed to allege that the defendant's actions were unreasonable in light of the specific factual circumstances. Similarly, in Nelski, the Court

found that the plaintiff failed to establish that the defendant had not followed reasonable procedures in preparing the consumer report.

In contrast to Jae and Nelski, the Plaintiff in the present case has alleged specific instances of inaccuracies in the consumer credit report and Experian's failure to properly investigate and rectify these inaccuracies despite receiving multiple notices from the Plaintiff. These factual allegations are akin to those in Johnson v. MBNA America Bank, NA, 357 F.3d 426 (4th Cir. 2004), where the Court held that the plaintiff had sufficiently alleged a claim under section 1681e(b) by showing that the defendant failed to follow reasonable procedures to ensure the accuracy of the reported information. Id. at 431. The detailed factual allegations presented by the Plaintiff not only meet the threshold for alleging a claim under section 1681e(b) but also establish Experian's potential failure to follow reasonable procedures as mandated by the FCRA.

Likewise, the Sixth Circuit established in Beaudry v. TeleCheck Services, Inc., 579 F.3d 702 (6th Cir. 2009). The plaintiff had sufficiently stated a claim under 1681e(b) by alleging that the defendant failed to maintain reasonable procedures to ensure the accuracy of the information in the plaintiff's consumer report, which led to the plaintiff being denied credit on multiple occasions. The Court emphasized that the plaintiff need not prove the claim at the pleading stage but only provide a plausible claim for relief based on specific factual allegations. Id. at 706. "A plaintiff bringing a claim under § 1681e(b) must establish that: (1) the consumer reporting agency published a report that was inaccurate; (2) the consumer reporting agency either negligently or willfully failed to follow reasonable procedures to assure the accuracy of the reported information; and (3) the consumer reporting agency's violation of § 1681e(b) caused the plaintiff to suffer actual damages." Beaudry v. TeleCheck Servs., Inc., 579 F.3d 702, 707 (6th Cir. 2009).

The Plaintiff's allegations in the present case are in line with the reasoning in Beaudry, as they outline specific instances of inaccuracies in the consumer credit report and Experian's failure to adequately investigate and correct these errors despite receiving notice from the Plaintiff. Consequently, the Plaintiff should be granted the opportunity to present evidence supporting their claims that Experian did not follow

41

reasonable procedures to ensure the maximum possible accuracy of the information in the consumer's credit report as required by 1681e(b). In addition, Boggio v. USAA Fed. Savings Bank, 696 F.3d 611, 614 (6th Cir. 2012), the Court held that the plaintiff's allegations were sufficient to establish a claim under § 1681e(b) when the plaintiff alleged that the defendant inaccurately reported an account as delinquent and failed to correct the inaccuracy despite being notified of the error. This case illustrates that, when a plaintiff provides specific factual allegations regarding inaccuracies in their consumer report and the defendant's failure to follow reasonable procedures, a claim under § 1681e(b) is successfully established.

Furthermore, even if the Defendant's arguments were to be accepted as true, they ultimately fail to withstand scrutiny when considered collectively, as they collapse atop one another due to a singular overarching reason. Plaintiff's claims can be brought under other provisions of the FCRA, such as U.S. Code § 1681i et seq., for negligence and willful noncompliance, without reliance on 1681e(b). As demonstrated in Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001), the 5th Circuit Court has upheld claims under U.S. Code § 1681i independent of 1681e(b). The Cousin Court further emphasized that "the FCRA mandates that, once a [consumer] reporting agency receives notice of a dispute from a consumer, the agency must 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate' and 'record the current status of the disputed information, or delete the item from the file'" (Cousin, 246 F.3d at 364, quoting 15 U.S. Code § 1681i(a)(1)(A) and (5)(A)). Furthermore, the Plaintiff's case includes specific instances of inaccuracies in the consumer credit report and Experian's failure to properly investigate and rectify these inaccuracies despite receiving multiple notices from the Plaintiff. For instance, the Plaintiff alleges that Experian failed to accurately report information onto the consumer credit report related to Capital One, General Electric, and Bridgecrest accounts, which negatively impacted the Plaintiff's credit standing, financial well-being, and deterioration of mental health. (Doc. #1, ¶ ¶ 39, 40, 41, 45(a), 119, 183-189). Despite multiple requests by the Plaintiff for Experian to conduct a thorough investigation into these disputed items, Experian allegedly refused or failed to do so, resulting in the Plaintiff suffering harm as demonstrated in the complaint. (Doc. #1, ¶ ¶ 45(a), 119, 183-189).

In addition to Cousin, the Sixth Circuit Court's decision in Beaudry v. TeleCheck Services, Inc., 579 F.3d 702 (6th Cir. 2009) supports the Plaintiff's claims under Section 1681i. In Beaudry, the Court recognized that a plaintiff could bring a claim under the FCRA for failing to conduct a reasonable investigation of the disputed information, independent of any reliance on Section 1681e(b).

Thus, even if the Defendant's assertion regarding U.S. Code § 1681e(b) were true, the Plaintiff's claims can still be brought under U.S. Code § 1681i for negligence and willful noncompliance, as stated in the both the third and fourth count brought against Experian. The Plaintiff's specific allegations of inaccuracies and Experian's refusal to properly investigate and rectify these disputed items, combined with the supporting case law from the Sixth Circuit Court, establish a solid foundation for the Plaintiff's claims.

### B. Defendant's Use of BMV Records to Discredit Plaintiff's Claims is Misleading and Inappropriate.

The Defendant presents Exhibit A as evidence, purporting that it substantiates Plaintiff's purchase and registration of a vehicle with General Electric Credit Union serving as the lienholder in October 2019. Nonetheless, Plaintiff has no recollection of procuring or operating the aforementioned vehicle and, during the relevant time frame, consistently drove a Mercedes-Benz C-Class 2015 daily. As a result, Plaintiff disputes the veracity of the information contained within Exhibit A and asserts that the Defendant did not adequately investigate the dispute or undertake reasonable efforts to confirm the accuracy of the reported data. Even then based on the requirements of the FCRA and Experian's inactions pursuant to 1681i, the information in dispute should have been permanently deleted as Experian refused or neglected to complete a consumer investigation. This calls into question the accuracy of the information reported by Experian, suggesting that Defendant have not properly investigated the Plaintiff's dispute or taken reasonable steps to verify the accuracy of the reported information. Secondly, Plaintiff highlights the distinction between a vehicle being titled in their name and actual ownership or operation of the vehicle. The fact that the vehicle was titled in the Plaintiff's name with General Electric Credit Union as lienholder does not necessarily mean that the Plaintiff owned or operated the vehicle. This distinction renders Exhibit A insufficient to fully discredit the Plaintiff's claim.

43

Specifically addressing the Title Record and the involvement of General Electric Credit Union as a lienholder, it is crucial to investigate the possibility of unauthorized transactions conducted in the Plaintiff's name. The discovery process is essential in this regard, as it allows for a comprehensive examination of the evidence to determine the root cause of the discrepancies. Therefore, dismissing the case at this stage would be premature and contrary to the principles of due process.

The discrepancy between Exhibit A and the Plaintiff's allegations may be attributable to several potential explanations, such as fraud, identity theft, or clerical errors. Given that these issues can only be adequately addressed through the discovery process, it is inappropriate to dismiss the case at this stage. Furthermore, Plaintiff would like to draw attention to an incident that highlights the potential for identity theft or fraud in the Plaintiff's case. On February 15, 2023, Plaintiff received a correspondence from Chase Bank, addressed to his business location, concerning an attempt to open an account using the name Elijah Burke (hereinafter referred to as Exhibit 12). It is important to note that the Plaintiff's actual name is Elijah Whaley, and not Elijah Burke, nor has Plaintiff ever assumed the name Elijah Burke. Chase Bank was unable to open the account due to difficulties in verifying the Plaintiff's identity, as evidenced in Exhibit 12. While this particular incident may not be directly connected to the disputed vehicle title and the General Electric tradeline, it serves as a compelling example of the potential for identity theft or fraudulent activities that could have far-reaching implications on other aspects of the Plaintiff's consumer credit history. This further underscores the necessity for a thorough investigation into the possibility of identity theft or fraud as a contributing factor in the discrepancies found in the Plaintiff's case.

Moreover, the case cited by the Defendant, McGee v. City of Cincinnati Police Dep't, No. 1:06-CV-726, 2007 WL 1169374, at *2 (S.D. Ohio Apr. 18, 2007), is distinguishable from the present case. In McGee, the Court dismissed the action because the complaint allegations were directly contradicted by public records. In the present case, however, the Plaintiff's allegations are supported by detailed documentation and are not directly contradicted by public records. Specifically, McGee, a former police officer, alleged that the defendants had violated his constitutional rights by maintaining false and stigmatizing information about him in their personnel records. The Court noted that many of the plaintiff's

44

allegations were directly contradicted by the public records, including the police department's personnel records and Court records related to the plaintiff's prior litigation. In the current case, the Defendant is attempting to discredit the Plaintiff's allegations by introducing potentially contradictory evidence, which is not the appropriate standard for evaluating the sufficiency of a complaint at the motion to dismiss stage.

It is essential to recognize that at the motion to dismiss stage, the Court must accept the Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the Plaintiff's favor. *See,* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Introducing contradictory evidence or public records at this stage is inappropriate, as the Court's role is to determine whether the Plaintiff has stated a plausible claim for relief, not to weigh the evidence or make factual determinations. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007). Any disputes regarding the accuracy of the Plaintiff's allegations or the veracity of the supporting evidence should be addressed through the discovery process and at trial, not in a motion to dismiss.

In the Sixth Circuit, Courts have consistently underscored the significance of assuming well-pleaded allegations to be true and interpreting them in the most favorable light for the plaintiff during the motion to dismiss stage. For instance, in Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007), the Court stated, "In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Likewise, in Bennett v. MIS Corp., 607 F.3d 1076, 1091 (6th Cir. 2010), the Court reiterated, "We must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."

In addition, Defendant's alleges Plaintiff has not plausibly alleged facts concerning Experian's procedures or that Plaintiff has failed to demonstrate injury or proximate cause are both misguided and baseless. The Defendant seeks to minimize the significance of the Plaintiff's allegations by characterizing them as general and conclusory. However, a careful examination of the Complaint reveals that the Plaintiff has provided a detailed account of the disputed information and Experian's inadequate response to the dispute, in accordance with the requirements of the FCRA. Defendant's attempt to dismiss the

45

Plaintiff's allegations as insufficient is not only unfounded, but it also ignores the appropriate standard for evaluating the sufficiency of a complaint at the motion to dismiss stage. At this stage, the Court must accept the Plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the Plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007); Bennett v. MIS Corp., 607 F.3d 1076, 1091 (6th Cir. 2010). Plaintiff's Complaint adequately alleges the specific procedures challenged and the relationship between those procedures and the information maintained by Experian.

In light of the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and allow this case to proceed to discovery, where the parties can further investigate and clarify the disputed issues. This would ensure a fair and just resolution of the matter, consistent with the principles outlined in relevant case law and the Federal Rules of Civil Procedure. If this Honorable Court finds any deficiencies within Plaintiff's Verified Complaint, then allowing the opportunity to amend before so the case can proceed on its merits.

*C.  Defendant's Deliberate Misrepresentation: False Statements to Evade Accountability.*

Defendant's unfounded assertions and attempts to undermine the Plaintiff's claims are not only misinformed but also suggestive of a deliberate effort to conceal the truth. Experian's conduct, as detailed in the Complaint, has inflicted considerable damage upon the Plaintiff, including a significant loss of income, increased stress, and denial of an automobile loan.

As substantiated by Plaintiff's Exhibit 9, the Plaintiff's 2021 adjusted gross income was approximately $102,940, which equates to around $8,500 per month before expenses. This figure is vastly different from the $300-$3,000 range erroneously stated by the Defendant. As depicted in Exhibit 11, the Plaintiff's most recently filed taxes reveal an adjusted gross income of a mere $12,196. This dramatic reduction in income, resulting in an alarming loss of $90,244, is a direct consequence of Experian's inaccurate consumer credit reporting. The Defendant's attempt to minimize the gravity of this loss is not only dishonest and reprehensible but also a blatant attempt to mislead this Honorable Court.

Defendant's deliberate attempt to misrepresent the facts and mislead the Court is a serious violation of the principles of candor, fairness, and honesty that underpin the legal profession. Such behavior contradicts the ethical duties and professional conduct expected from parties in a Court of law. In Model Rules of Professional Conduct Rule 3.3 (a)(1), attorneys are prohibited from knowingly making false statements of fact or law to a tribunal or failing to correct false statements previously made. The Defendant's calculated effort to obscure the truth in the present matter not only undermines the integrity of these proceedings but also hinders the Court's ability to accurately assess the merits of the Plaintiff's claims. It is crucial that the Court takes the Defendant's dishonest conduct into consideration when evaluating the credibility of their arguments and determining the appropriate course of action in this case.

Moreso, the denial of the Plaintiff's application to finance the purchase of a $250,000 Mercedes Benz automobile, as referenced in Plaintiff's Exhibit 3.3, serves as yet another example of the tangible harm caused by Experian's negligent actions. This denial, along with the substantial loss of income, loss of sleep, undue stress, exemplify the far-reaching consequences of Experian's failure to accurately report consumer credit information, which have adversely impacted the Plaintiff's financial and personal life.

Defendant's feeble attempt to trivialize the Plaintiff's allegations and shift the blame by asserting that Plaintiff has not plausibly alleged facts concerning Experian's procedures, injury, or proximate cause is entirely without merit. It is apparent that Experian seeks to evade responsibility for its misconduct by attempting to divert this Honorable Court's attention from the core issues in this case. At the motion to dismiss stage, this Honorable Court's role is to determine whether the Plaintiff has stated a plausible claim for relief, not to weigh the evidence or make factual determinations. Plaintiff's allegations, taken as true and construed in the light most favorable to the Plaintiff, sufficiently establish a connection between the injury and Experian's actions.

In light of the foregoing, Plaintiff vehemently rejects Experian's baseless arguments and respectfully requests that the Court deny the Motion to Dismiss, allowing this case to proceed to discovery. During this stage, the Plaintiff will have the opportunity to substantiate his claims, further exposing Experian's negligent procedures and the irreparable harm caused by their inaccurate credit reporting. Likewise,

should this Honorable Court find any deficiencies within the Verified Complaint, than award Plaintiff the opportunity to amend the complaint.

*D. Plaintiff's Complaint Clearly States a Claim Under 15 U.S. Code § 1681i(a)(1)(A).*

Additionally, the Defendant's claim that the Plaintiff has not adequately alleged facts concerning Experian's procedures with respect to his information is without merit. The Plaintiff's Verified Complaint clearly outlines the specific procedures challenged and how they relate to the inaccuracies in the Plaintiff's credit file, and are not inconsistent or contradictory, as Experian claims, but rather point to the insufficiency of the reinvestigation conducted by the Defendant. The attempt to dismiss the Plaintiff's claim by focusing on general and conclusory statements is a disingenuous misrepresentation of the facts presented in the Verified Complaint.

The Defendant's citation of Petronykoriak v. Equifax Info. Servs. LLC serves to inadvertently support the Plaintiff's position. The case emphasizes the importance of adhering to proper reinvestigation procedures under Section 1681i(a) of the FCRA. While the Defendant attempts to use the case to discredit the Plaintiff's claims, it actually highlights the legal obligations that consumer reporting agencies like Experian must fulfill. In the Plaintiff's case, the central issue is not whether Experian conducted a reinvestigation, but rather the adequacy and compliance of the reinvestigation with the FCRA, and more importantly Experian's negligence or noncompliance with conducting a consumer investigation into the initial consumer dispute letter mailed to them and subsequent letter. The Plaintiff contends that Experian failed to properly investigate the disputed items, verify the accuracy of the reported information, and take the necessary steps required by the FCRA to rectify any inaccuracies.

Contrary to Defendant's assertion, Plaintiff's allegations are not refuted by the documents incorporated into the Complaint. While these documents may demonstrate that Experian eventually conducted a reinvestigation, they do not establish the adequacy or thoroughness of the reinvestigation. Furthermore, Defendant's reliance on the Sixth Circuit's decision in Dickens v. Trans Union Corp., 18 F. App'x 315, 319 (6th Cir. 2001) is misplaced. While the Sixth Circuit noted that damages would be difficult to prove absent an inaccuracy, it did not hold that inaccuracy is an essential element of a claim

48

under Section 1681i. Plaintiff's Complaint sufficiently alleges negligence and noncompliance under Section 1681i, and inaccuracies in the credit reporting, which has caused harm, including substantial loss of income, mental harm, undue stress and of an automobile loan. .

Contrary to Defendant's assertion, Plaintiff's allegations are not refuted by the documents incorporated into the Complaint. While these documents may demonstrate that Experian conducted a reinvestigation, they do not establish the adequacy or thoroughness of the reinvestigation. The Court must consider the Plaintiff's well-pleaded allegations as true and construe them in the light most favorable to the Plaintiff at the motion to dismiss stage, as established by the Sixth Circuit in Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) and Bennett v. MIS Corp., 607 F.3d 1076, 1091 (6th Cir. 2010).

In light of the above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss and allow this case to proceed to discovery. Plaintiff's well-pleaded allegations, when accepted as true and construed in the light most favorable to the Plaintiff, are sufficient to state a plausible claim for relief under the FCRA.

## VI.   CONCLUSION

Plaintiff's Verified Complaint alleges violations of the FCRA and related claims, providing specific allegations and factual basis for the same. Defendant has attempted to discredit Plaintiff's claims, but Plaintiff argues that such attempts are without merit and do not warrant the dismissal of the Complaint with prejudice. Instead, Plaintiff urges this Honorable Court to allow the case to proceed to discovery to further investigate and clarify the disputed issues. Should this Honorable Court find any deficiencies in the Verified Complaint, Plaintiff respectfully requests the opportunity to amend the Complaint to remedy any such deficiencies and proceed on the merits of the case. Dismissing the case at this stage would be premature and contrary to the principles of due process. Therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss with Prejudice and allow this case to proceed on its merits.

Respectfully submitted,

Dated May 1, 2023

/s/Elijah N. Whaley
6957 SpringFarm Court
Dayton, Ohio 45459
(937) 809-4479
ElijahWhaley@proton.me
Pro Se Litigant

## CERTIFICATE OF SERVICE

On May 1, 2023, I Elijah Whaley hereby certify that a true and correct copy of the above and

foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss with Prejudice,

Plaintiff's Memorandum in Support of Opposition and corresponding documents have been

served. All copies of documents required to be served by Fed. R. Civ. P.5(a) and OR Civ. R.

Civ.R. 5(B)(2) have been so served. Mailed via United States Postal Service, first class mail, to

the addresses as follows:

> Alexander W. Prunka
> JONES DAY
> North Point
> 901 Lakeside Avenue
> Cleveland, Ohio 44114

Dated May 1, 2023

/s/Elijah N. Whaley
6957 SpringFarm Court
Dayton, Ohio 45459
(937) 809-4479
ElijahWhaley@proton.me